The CHURCH OF the VISIBLE INTEL-
LIGENCE THAT GOVERNS THE
UNIVERSE, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 574–79T.

United States Claims Court.

Dec. 1, 1983.

Richard T. Rutherford, an officer, pro se.

Michael V. Marino, Washington, D.C., with whom was Asst. Atty. Gen., Glenn L. Archer, Jr., Washington, D.C., for defendant.

## OPINION

MAYER, Judge.

Plaintiff, The Church of the Visible Intelligence that Governs the Universe, brought suit for a declaratory judgment pursuant to section 7428(a) of the Internal Revenue Code of 1954 (I.R.C.), 26 U.S.C. § 7428(a), that it is a tax exempt organization under I.R.C. § 501(c)(3) and a "church" under I.R.C. § 170(b)(1)(A)(i). Defendant opposes on the grounds that plaintiff neither established in the administrative record that it is a church nor satisfied any of the requirements for tax exempt status.

## FACTS

Plaintiff first applied for exemption from federal income taxes in June of 1978, less than one month after it was organized as an unincorporated association. The initial application was returned as incomplete, but was resubmitted several weeks later with a list of proposed activities, a proposed budget, bylaws, and articles of association which incorporated language identical to that used in I.R.C. § 501(c)(3) to describe a tax exempt organization.*

The bylaws provided for meetings "from time to time as determined solely by the founder and head of the Church ... or by one succeeding him;" that "all rules, regulations or Articles of Association shall be determined solely by the founder of the church" and "shall not be amended or abridged while he lives;" and that "upon the death of the Founder ...," the "Head of the Church ... shall be chosen by the Board of Directors." The application identified Richard T. Rutherford as the organization's founder and chief officer, and Richard Peek Rutherford and Bryson M. Kratz as vice presidents.

Plaintiff's proposed budget showed it would spend $3,000 as a downpayment for a meeting place and $275 for advertisements, publication expenses and legal advice, but the only asset listed was $100 donated by its founder. However, in response to an application question, plaintiff said it would raise additional funds by seeking contributions, selling religious articles and collecting dues of $10 a month from its members.

Plaintiff responded to an application question about its current activities by stating, "None—just forming." But it listed its proposed activities as "the purchase of suitable premises ... for regularly scheduled church services ... [and] educational meetings to explain to potential new members the doctrines of the Church;" "distribution of written copies of the doctrines of the Church;" and "soliciting new members for the Church." Plaintiff noted on the application that it would "seek to win converts ... in order to become fully operational," and said it would engage in political activities "only insofar as legislation tends to infringe on freedom of religion."

After reviewing the application, the Internal Revenue Service (IRS) posed a series of questions. Plaintiff responded, in part, that it had no formal program of worship because its religion was new, but would have one when warranted by a large enough congregation. It had no ordained ministers or other paid staff and only three members and two or three prospective members. Plaintiff added that in the future the pastor of each congregation would be selected by revelation, rather than by political election, and compensation would be based on prevailing wages for similar positions in major denominations.

---

\* Plaintiff's articles of association essentially parroted this pertinent part of I.R.C. § 501(c):
 "The following organizations are [exempt from taxation]:
 (3) Corporations, and any community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, testing for public safety, literary, or educational purposes, or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual, no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation, and which does not participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of any candidate for public office."

By letter of March 15, 1979, the IRS notified plaintiff that as presently organized and operated it was not a church within the meaning of section 170(b)(1)(A)(i) and was not entitled to recognition of exemption under section 501(c)(3). The letter explained:

> While you have stated that you will engage in regular church operations, you have not yet begun to engage substantially in any proposed activities. Accordingly, we have concluded that you have failed to show that you will be operated exclusively for any of the exempt purposes specified in section 501(c)(3) because you have not described your various proposed activities in sufficient detail . . . . Moreover, since your founder, Mr. Rutherford, has sole authority and discretion over the operations of the organization, it is our conclusion that you have not established that you will be operated for public rather than private interests . . . . The information you have provided indicates that you intend to perform marriages, internments, and blessings, although you do not now perform any sacerdotal functions. You indicate that you will perform religious functions, but do not have an established place of worship. Also, at this time, your ministers are not ordained and they have not followed any formal course of religious instruction. In addition, you have not established a definite and distinct legal existence, a formal code or doctrine and discipline, or a distinct religious history.

Plaintiff filed a timely protest on the grounds that it was in compliance with the statutes, held public meetings and church services, operated a newsletter, conducted "person-to-person proselytizing" and was at no time, nor would it ever be, operated for private interests. Its founder's authority in no way differed from that of leaders of other recognized religions and all of this information had been made available to the IRS.

In June of 1979, plaintiff's officers adopted a resolution changing the name from Church of the Creator to The Church of the Visible Intelligence that Governs the Universe, and executed new articles of association which were almost identical to those previously in effect. At the same time, plaintiff amplified its earlier answers to Internal Revenue Service questions by setting out the following limits on compensation for full-time employees:

> The Founder will receive up to but not more than the salary of the chief executive of the United States, the President. Ministers will receive up to but not more than members of the congress of the United States. All other paid up to but not more than federal works [sic] in comparable occupations. Compensation will be decided on a yearly basis and presented to the Board of Trustees and at no time will compensation or salary be determined in an arbitrary manner.

It also stated that there was now one regular congregation which meets every Sunday in Los Angeles; it holds regular prayer meetings in Reseda and Glendale, California; it will ordain ministers to carry out the duties of preaching, teaching, performing marriages and presiding at funerals; and no certificates of ordination will be sold through the mail.

Plaintiff also sent the IRS "a recognized creed" and "doctrine," advertisements and leaflets promoting the organization, a list of its expenditures, and four of its monthly newsletters. The doctrine provided that a "member is expected . . . to commit a minimum of 1% of his income . . . to sustain the programs of the church." It said "the monolithic structure of the family [which] was created by our creator . . . [as a] masterpiece of organizational unity . . . [and] used with great success by business, military, educational and religious groups . . . is the model for the organizational structure of the Church." Administrative expenditures from January to May of 1979 totaled $525.

On October 10, 1979, the IRS issued a final adverse ruling denying plaintiff's application for tax exemption because it failed to meet any of the section 501(c)(3) requirements. It further said that even if plaintiff were a 501(c)(3) organization, it would be

classified as a private foundation because it failed to establish that it was a church. Within 90 days of the adverse determination, *see* I.R.C. § 7428(b)(3), plaintiff brought this action in the United States Court of Claims. By order of February 20, 1981, that court ruled that plaintiff's founder could represent the organization in this "unusual case" even though he was not an attorney. 226 Ct.Cl. 532 (1981).

The parties filed cross-motions for summary judgment in which defendant argued that the scope of review was confined to the administrative record, but asked the court to consider additional material, the personal income tax returns of plaintiff's founder, not in that record. In denying both cross-motions, the court observed that the returns suggest that the suppositious church was a financial drain on its founder, rather than a benefit to him. *The Church of the Visible Intelligence that Governs the Universe*, No. 574–79T, slip op. at 2 (Ct.Cl. Apr. 16, 1982) (per curiam).

On October 1, 1982, the case was transferred to the United States Claims Court by section 403(d) of the Federal Courts Improvement Act of 1982, Pub.L. No. 97–164, 96 Stat. 58. The parties agreed to stipulate to the administrative record and file cross-motions for summary judgment, which they have done.

## DISCUSSION

■ I.R.C. § 7428 permits this court, the United States Tax Court and the United States District Court for the District of Columbia to issue declaratory judgments on the initial qualification of an organization for tax exempt status under I.R.C. § 501(c)(3) if a plaintiff has exhausted its administrative remedies and brought suit within 90 days after a final adverse determination is issued. Plaintiff has complied with these jurisdictional prerequisites.

■ Because I.R.C. § 7428 requires a plaintiff to exhaust its administrative remedies, the scope of review in these cases is usually limited to the administrative record. *See Virginia Professional Standards v. Blumenthal*, 466 F.Supp. 1164, 1168 (D.D.C.

1979); *Houston Lawyer Referral Service v. Commissioner*, 69 T.C. 570, 574 (1978). A court will allow a party to introduce evidence which was not part of the administrative proceeding only on rare occasions upon a showing of good cause. *See First Libertarian Church v. Commissioner*, 74 T.C. 396, 398 (1980). Otherwise, the parties could circumvent the exhaustion requirement and convert the proceeding into a trial *de novo*. *See Virginia Professional Standards v. Blumenthal*, 466 F.Supp. at 1168; *Church in Boston v. Commissioner*, 71 T.C. 102, 105 (1978). Therefore, this court's review is confined to those materials the parties have stipulated as the administrative record.

■ In the United States Tax Court there are special rules governing this type of case. Tax Court Rule of Practice and Procedure 217, for example, provides that the facts as represented in the administrative record will be deemed true and the burden of proof is on plaintiff to prove the IRS determination is wrong. This court has no similar rules, but the legislative history of section 7428 indicates that Congress intended that we and the District Court follow the practices of the Tax Court. The Senate Report stated that "rules are to be developed by the courts under their rulemaking powers .... Insofar as is practical those rules should conform to the rules that the tax court develops with regard to declaratory judgment suits ...." S.Rep. No. 94–938, 94th Cong., 2d Sess. 588 (1975), U.S. Code Cong. & Ad.News 1976, 2897, 4012. Because the IRS relies on the facts submitted on an initial application for tax exempt status, and conducts no independent investigation, *see Houston Lawyer Referral Service v. Commissioner*, 69 T.C. at 577, and because Congress contemplated a "body of national unified precedents," *see* H.R.Rep. No. 94–658, 94th Cong., 1st Sess. 285 (1975), U.S.Code Cong. & Ad.News 1976, 2897, 3181, the court will assume the facts in the administrative record are true. Plaintiff has the burden of proving that the conclusions based on those facts set out in the IRS determination are incorrect. *See Incorporated Trustees of Gospel Worker So-*

*ciety v. United States,* 510 F.Supp. 374, 377 n. 6 (D.D.C.1981), *aff'd,* 672 F.2d 894 (D.C. Cir.1981).

*Exemption*

■ In this case, the IRS determined that plaintiff failed to satisfy all of the requirements for a tax exempt organization in I.R.C. § 501(c)(3). Subsections 501(a) and (c)(3) provide an exemption from federal income taxation for an organization if (1) it is organized and operated exclusively for an exempt purpose; (2) its net earnings do not inure to the benefit of any private shareholder or individual; and (3) its activities do not include in substantial part participation or intervention in any political campaign or the carrying on of propaganda or other attempts to influence legislation. *See* note, *supra.* Failure to satisfy any one of these requirements will result in denial of tax exemption. *See Western Catholic Church v. Commissioner,* 73 T.C. 196, 207 (1979), *aff'd,* 631 F.2d 736 (7th Cir.1980); *Hancock Academy of Savannah, Inc. v. Commissioner,* 69 T.C. 488, 492 (1977).

■ Because the first requirement is stated conjunctively, an organization must separately satisfy both parts of it. *See* Treas.Reg. § 1.501(c)(3)–1(a)(1); *General Conference of the Free Church v. Commissioner,* 71 T.C. 920, 926 (1979). It must be both "organized" and "operated" exclusively for exempt purposes. To be organized exclusively for exempt purposes, the charter must limit its purpose to one or more of the exempt activities specified in section 501(c)(3). *See* Treas.Reg. § 1.501(c)(3)–1(b)(1)(i); *General Conference of the Free Church v. Commissioner,* 71 T.C. at 926. The presence of a single substantial non-exempt purpose will result in denial of exemption. *See Better Business Bureau v. United States,* 326 U.S. 279, 283, 66 S.Ct. 112, 114, 90 L.Ed. 67 (1945). To be operated exclusively for exempt purposes, an organization must engage primarily in activities which accomplish at least one exempt purpose. *See* Treas.Reg. § 1.501(c)(3)–1(c); *Dumaine Farms v. Commissioner,* 73 T.C. 650, 663 (1980). If its activities serve a private rather than public interest, it will be denied exemption. *See* Treas.Reg. § 1.501(c)(3)–1(d)(1); *Western Catholic Church v. Commissioner,* 73 T.C. at 208.

■ Plaintiff's articles specify that it is "organized exclusively for charitable, religious, and educational purposes," and defendant does not contest that the organizational requirement is satisfied. It argues, however, that plaintiff has not shown it is operated exclusively for exempt purposes. It has not described its proposed activities in sufficient detail and its bylaws grant "totalitarian powers" to its founder, raising the inference that the organization will be used for private purposes. Plaintiff maintains it has fully described its activities; it is operated for public purposes; and the powers of its founder are no different from those of leaders of other religions.

Despite its financial limitations, plaintiff could have more fully described its anticipated activities. Even so, on the administrative record it has made the threshold showing. *Compare Pius XII Academy, Inc. v. Commissioner,* 51 T.C.M. (P–H) ¶ 82,097 (1982), *and Truth Tabernacle v. Commissioner,* 41 T.C.M. (CCH) ¶ 37,872 (1981), *with Dumaine Farms v. Commissioner,* 73 T.C. 650 (1980), *and Universal Church of Scientific Truth, Inc. v. United States,* 32 A.F.T.R.2d (P–H) ¶ 73–6121 (N.D.Ala.1973). Section 5.02 of Revenue Procedure 80–25, 1980–1 C.B. 668, provides in part that:

> Exempt status will be recognized in advance of operations if proposed operations can be described in *sufficient detail* to permit a conclusion that the organization will clearly meet the particular requirements of the section under which exemption is claimed. A mere restatement of purposes or a statement that proposed activities will be in furtherance of such purposes will not satisfy this requirement . . . . *Where the organization cannot demonstrate to the satisfaction of the Service that its proposed activities will be exempt, a record of actual operations may be required before a ruling or determination letter will be issued.* [Emphasis added.]

*See also* Revenue Procedure 72–4, § 5.02, 1972–1 C.B. 707. Plaintiff's description of its activities is not as precise or extensive as the IRS would prefer, but the court concludes it has shown in "sufficient detail" that it intends to engage primarily in activities which accomplish one or more of those exempt purposes specified in section 501(c)(3).

Plaintiff neither refused to answer any questions propounded by the IRS nor merely restated its purposes in describing its activities. It made a concerted effort to demonstrate that it was a tax exempt organization. *Compare General Conference of the Free Church v. Commissioner,* 71 T.C. at 923–25, 930–31, *with Western Catholic Church v. Commissioner,* 73 T.C. at 198, *and Pulpit Resources v. Commissioner,* 70 T.C. 594, 597–99 (1978). It explained that it holds regular prayer meetings and weekly services, both of which appear to further plaintiff's religious and educational purposes. It provided a list of proposed activities, a list of expenditures, copies of its newsletter and other pertinent information.

▆▆▆ Congress enacted section 7428 to permit an organization to get a declaratory judgment based on proposed activities before substantial resources have been spent on operations. Courts should not insist on such a high standard of proof that only an established organization could qualify. *See Dumaine Farms v. Commissioner,* 73 T.C. at 665. If the IRS believed plaintiff had not supplied sufficient information to make a determination, it could have refused to issue a ruling, rather than issue adverse determinations. *See* Revenue Procedure 80–25, § 5.02, 1980–1 C.B. 668; Revenue Procedure 72–4, § 5.02, 1972–1 C.B. 707.

Defendant also argues that plaintiff fails the operational test because its bylaws grant totalitarian powers to founder Rutherford, raising the inference that it is operated for his benefit. Plaintiff says this issue is no longer pertinent because those bylaws were superseded by new articles of association adopted when the organization changed its name, but that does not appear to be the case.

▆▆▆ An organizational structure like plaintiff's entailing domination by the founder raises concern about the potential for abuse unless allayed by other information in the record. *See Founding Church of Scientology v. United States,* 188 Ct.Cl. 490, 498, 412 F.2d 1197, 1201 (1969). But domination does not necessarily disqualify an organization from exemption. *See Bubbling Well Church of Universal Love, Inc. v. Commissioner,* 74 T.C. 531, 535 (1980), *aff'd,* 670 F.2d 104 (9th Cir.1981). The regulations impose no limits on the powers a tax exempt organization grants its officers; they only require that it be operated for public rather than private purposes. If there was any evidence in the record to support defendant's inference of private benefit, the court would be troubled by Rutherford's powers. There are organizations which abuse their tax exempt status and the integrity of the tax system requires vigilance against them. *See Riker v. Commissioner,* 244 F.2d 220 (9th Cir.1957); *Southern Church of Universal Brotherhood Assembled, Inc. v. Commissioner,* 74 T.C. 1223 (1980).

This record supports the opposite inference. It shows that Rutherford has contributed money to the organization without receiving any return benefit. He did not exercise totalitarian powers in the only recorded instance of action by the officers. When plaintiff changed its name and promulgated new articles of association, all three officers acted, not just Rutherford. The court rejects defendant's inference and holds that in light of its past and proposed actions plaintiff is operated for the public benefit. Therefore, the first requirement that it be organized and operated exclusively for exempt purposes is satisfied.

Because plaintiff has provided that compensation to employees will be based on prevailing wages for similar positions, it argues that it also satisfies the second requirement that no part of its net earnings inure to any private individual. Defendant asserts this requirement has not been satisfied because plaintiff did not provide a compensation schedule for employees other

than an upper limit on wages based on the salaries of federal workers, United States Senators and the President. Defendant notes that while plaintiff did not say that its founder would at all times receive $200,-000 like the President, there is nothing to prevent it.

What defendant overlooks, however, is that plaintiff's articles of association require that:

No part of the net earnings of the organization shall inure to the benefit of, or be distributable to its members, trustees, officers, or other private persons, except that the organization shall be authorized and empowered to pay compensation for services rendered . . . .

Plaintiff is expressly restricted from using its earnings to benefit its officers or employees. It has also repeatedly stated that it currently has no paid staff and that the salaries of any future employees will be reasonable. These facts are assumed to be true. *See Incorporated Trustees of Gospel Worker Society v. United States,* 510 F.Supp. at 377 n. 6. In any event, reasonableness of compensation is a question to be determined based on the facts prevailing at the time. *Founding Church of Scientology v. United States,* 188 Ct.Cl. at 496, 412 F.2d at 1200; *see also Bubbling Well Church of Universal Love, Inc. v. Commissioner,* 74 T.C. at 537–38. Plaintiff has yet to pay any compensation and the court will not speculate now whether future pay limits will be reasonable.

A detailed criteria for compensation would have been helpful, but the court cannot say plaintiff has failed to make the threshold showing. It has established that it is restrained by its articles from providing unreasonable compensation, has provided no compensation or other benefits to anyone to date, and any future compensation will be based on prevailing wages. From the record viewed in its entirety, plaintiff's net earnings manifestly do not inure to the benefit of any private individual. *Compare Bubbling Well Church of Universal Love, Inc. v. Commissioner,* 74 T.C. at 535, *with Dumaine Farms v. Commission-*

er, 73 T.C. at 671, *and Pulpit Resources v. Commissioner,* 70 T.C. at 611.

Plaintiff argues that it also satisfies the third requirement of I.R.C. § 501(c)(3) because it does not intend to engage in political or lobbying activities. Defendant asserts that plaintiff fails because it responded to a question concerning its activities to influence legislation by stating, "Only insofar as legislation tends to infringe on freedom of religion." Plaintiff replies that its answer is irrelevant because the government is barred by the Constitution from infringing on religious freedom.

The First Amendment does not preclude this inquiry, at most an incidental burden on free exercise of religion, *see Johnson v. Robison,* 415 U.S. 361, 385, 94 S.Ct. 1160, 1174, 39 L.Ed.2d 389 (1974), and the court shares defendant's concern over plaintiff's cryptic response. The IRS, however, expressed no similar concern. The preliminary ruling does not mention this response or raise any other issue about political activities. There is also nothing indicating plaintiff was ever asked for clarification.

The court need not attempt to decipher the response because any concern is allayed when the record is examined as a whole. Plaintiff's articles specifically prohibit this activity and its past and proposed actions show nothing that would be a violation. Unlike in *Christian Echoes National Ministry, Inc. v. United States,* 470 F.2d 849 (10th Cir.1972), plaintiff has not proposed or engaged in attempts to influence legislation or intervened in political campaigns. The court concludes that despite plaintiff's unhelpful response it has met the threshold requirement that a substantial part of its activities will not be political or lobbying.

Plaintiff satisfies the I.R.C. § 501(c)(3) requirements for tax exempt status and the court declares that plaintiff is a tax exempt organization. Should it deviate from the representations relied upon here, the IRS will, of course, be free to revoke its recognition of tax exempt status. *See Western Catholic Church v. Commissioner,* 73 T.C. 196 (1979).

**64**

*Church*

 Plaintiff also seeks a declaration that it is a church under I.R.C. § 170(b)(1)(A)(i), rather than a private foundation. Under the statutory scheme, an organization which satisfies the section 501(c)(3) criteria is considered a private foundation unless it establishes that it comes within one of four specified exceptions. I.R.C. § 509(a). Private foundations are subject to an excise tax on their net investment income, I.R.C. § 4940, excise taxes for prohibited acts or failures to act, I.R.C. §§ 4941–4948, and stringent record-keeping and reporting requirements to assure they promptly and properly use their funds for charitable purposes. H.R.Rep. No. 91–413, 91st Cong., 1st Sess. 19 (1969); *see also* S.Rep. No. 91–552, 91st Cong., 1st Sess. 27 (1969); U.S.Code Cong. & Ad. News 1969, 1645; *Change-All Souls Housing Corp. v. United States,* 229 Ct.Cl. 380, 381, 671 F.2d 463, 465 (1982). By I.R.C. § 509, Congress exempted certain organizations, including churches, from private foundation classification, thereby excusing them from these requirements. It believed they would be responsive to the needs of the public and, therefore, not require government regulation. *See* I.R.C. §§ 170 and 509(a); S.Rep. No. 91–552, 91st Cong., 1st Sess. 57 (1969); H.R.Rep. No. 91–413, 91st Cong., 1st Sess. 41 (1969).

Plaintiff argues that it has established that it is a church and that imposing the requirements of a private foundation would prohibit any meaningful activity. Defendant concedes that plaintiff is ostensibly a religious organization, but asserts it has not established that it is a church as Congress used that word in I.R.C. § 170(b)(1)(A)(i).

 While federal tax authorities must apply the word church in a variety of contexts, there is no ready definition of it. *See generally* Whelan, *"Church" in the Internal Revenue Code: The Definitional Problems,* 45 Fordham L.Rev. 885 (1977). It is generally accepted that Congress intended a more restricted definition for a "church" than for a "religious organization," but probably because of First Amendment considerations it

has provided virtually no guidance on this distinction. *See American Guidance Foundation, Inc. v. United States,* 490 F.Supp. 304, 306 (D.D.C.1980); *Chapman v. Commissioner,* 48 T.C. 358, 362 (1967).

 The IRS has followed the lead of Congress and does not define a church in its regulations, either. However, it uses 14 criteria to decide whether an organization is a church. To receive a favorable determination, one must satisfy at least several of these criteria, which are:

(1) a distinct legal existence;

(2) a recognized creed and form of worship;

(3) a definite and distinct ecclesiastical government;

(4) a formal code of doctrine and discipline;

(5) a distinct religious history;

(6) a membership not associated with any other church or denomination;

(7) an organization of ordained ministers;

(8) ordained ministers selected after completing prescribed studies;

(9) a literature of its own;

(10) established places of worship;

(11) regular congregations;

(12) regular religious services;

(13) Sunday schools for religious instruction of the young; and

(14) schools for the preparation of its ministers.

*See* Remarks of IRS Commissioner Jerome Kurtz, PLI Seventh Biennial Conference on Tax Planning (Jan. 9, 1978), *reprinted in* Fed.Taxes (P–H) ¶ 54,820 (1978). Because few, if any, new organizations could satisfy all 14 criteria, the IRS does not give controlling weight to any one of them. *Id.*

Courts are as reluctant to tackle this question as Congress is. *See generally* B. Hopkins, The Law of Tax Exempt Organizations § 8.3 (4th ed. 1983). The Supreme Court offered a partial definition in a case involving unemployment compensation taxes, but expressly disavowed any intent to

define or limit what constitutes a church under any provision of the Internal Revenue Code. *St. Martin Evangelical Lutheran Church v. South Dakota,* 451 U.S. 772, 784 n. 15, 101 S.Ct. 2142, 2149 n. 15, 68 L.Ed.2d 612 (1981). Another court concluded that because Congress has not defined church, it intended that courts use the general understanding of the word. *See De La Salle Institute v. United States,* 195 F.Supp. 891, 903 (N.D.Cal.1961). The only case attempting to define it held that for purposes of the Internal Revenue Code, at a minimum a church had to include a body of believers or communicants which assemble regularly to worship and be reasonably available to the public in its conduct of worship, educational instruction, and promulgation of doctrine. *American Guidance Foundation v. United States,* 490 F.Supp. at 306.

On its understanding of the word and the administrative record before it, the court concludes plaintiff is not a church. No reason appears to doubt plaintiff's sincerity, but the information in the record is not sufficient to establish it as a church. Therefore, the IRS did not err in its determination.

Exemption from taxation as a church is not a right, but a matter of legislative grace. *See Christian Echoes National Ministry, Inc. v. United States,* 470 F.2d at 854. Plaintiff cannot merely declare it is a church; it must demonstrate that it is. *Id.* For example, plaintiff has said that it will perform sacerdotal functions, but has provided no information or doctrine pertaining to them. The government has no office to question the validity of these indicia of religiousness, but it has a right to know what they are in deciding whether a purported church is real or pretext. Likewise, no evidence of charitable activities typically associated with a church was presented. A new religious organization should not be held to a standard only an established church can satisfy, but one man's publication of a newsletter and extemporaneous discussion of his beliefs, even when advertised, is not sufficient to consti-

tute a church within the common understanding of that word.

Plaintiff has satisfied few of the 14 requirements in the IRS guidelines and fails the minimal test set out in *American Guidance Foundation.* The record indicates that plaintiff has only three members and is not clear on whether they are the officers of the organization, members of Rutherford's family, or others. At a minimum, a church must include a body of believers which assembles regularly to worship. *See* 490 F.Supp. at 306. If membership does not extend beyond Rutherford's immediate family, it would appear that plaintiff is engaged in a private religious enterprise, rather than a church. *See id.* at 307. This determination may appear harsh, but plaintiff may seek another ruling that it is a church based on a better showing than presented here. *See Church in Boston v. Commissioner,* 71 T.C. at 108.

### CONCLUSION

Plaintiff is a religious foundation described in I.R.C. § 501(c)(3) and therefore is exempt from taxation under I.R.C. § 501(a). Plaintiff is not excepted from the provisions of section 509 because it has failed to establish that it is a church under I.R.C. § 170(b)(1)(A)(i) or that it comes within any of the other stated exceptions.

It is so ORDERED.