## CHURCH OF SPIRITUAL TECHNOLOGY, Plaintiff,

v.

## The UNITED STATES, Defendant.

### No. 581–88T.

United States Claims Court.

Oct. 2, 1989.

Monique E. Yingling, Washington, D.C., for plaintiff. Thomas C. Spring, of counsel.

David Gustafson, with whom was Asst. Atty. Gen. Shirley D. Peterson, Washington, D.C., for defendant.

## OPINION

BRUGGINK, Judge.

The Church of Spiritual Technology ("CST") brings this suit for declaratory judgment under section 7428 of the Internal Revenue Code of 1954 ("I.R.C."), 26 U.S.C. § 7428. CST filed its complaint on October 6, 1988 following an adverse exemption ruling by the Internal Revenue Service ("IRS"). Plaintiff seeks a declaration that the Commissioner wrongly denied its initial application for exempt status under section 501(c)(3) of the I.R.C., 26 U.S.C. § 501(c)(3) (1982).

The record filed by defendant on April 20, 1989 fills eleven boxes. It includes CST's application materials dating back to its initial application in 1983, IRS communications with CST from the same time period and CST on-site review materials. On May 12, 1989, plaintiff filed a motion excepting to the record, as filed. CST's motion requests the following:

1) to include as part of the administrative record four boxes of documents which will be referred to hereafter as "the Commercialism Submission";

2) to revise the description in the record index;

3) to exclude materials CST alleges are third-party materials;

4) to include documents misplaced by the defendant;

5) to substitute original documents for defendant's inadequate copies; and

6) to include documents relating to the IRS on-site review.

The issue has been fully briefed. Oral argument was held on August 22, 1989. After argument the court denied the motion insofar as CST sought to exclude what CST refers to as third-party materials, spe-

cifically, newspaper articles and court opinions sent by the IRS to CST for comment. Also during argument, defendant agreed to remedy the other deficiencies complained of with the exception of item one above—failure to include the Commercialism Submission. As to that matter, the parties were afforded the opportunity to file additional affidavits. Plaintiff filed the affidavit of William C. Walsh, attorney for CST during the relevant administrative phase. Defendant elected not to file an additional affidavit and responded by brief to the new assertions. After consideration of the submissions and oral argument, the court concludes that the motion should be denied insofar as it seeks inclusion of the Commercialism Submission.

## I. FACTUAL BACKGROUND

The facts are drawn from uncontested parts of the record filed by defendant, and, for purposes of this motion, from the motion papers. They are largely uncontested. On certain key points, however, the parties disagree. The disagreements relate primarily to how the parties characterize events surrounding the post-protest conference of right. In any event, solely for purposes of this motion, the court will presume that plaintiff's version of disputed events is correct.

CST is a church of Scientology. At the time CST had its exemption application pending, two other churches of Scientology—the Church of Scientology International ("CSI") and the Religious Technology Center ("RTC")—also had exemption applications pending under section 501(c)(3). Each had applied separately. CST stated that its application was "not a group application" and should be considered solely on the basis of information furnished by it.

On January 7, 1986, the IRS issued virtually identical initial adverse rulings to the three applicants. In this initial ruling, the IRS stated, among other things, that CST would not be considered in isolation from other organizations within the Church of Scientology; that CST exercises a decisive influence over other such organizations; that CST was not operated for exempt purposes because it operated in a commercial manner; and that CST had failed to provide requested information necessary for a ruling. On July 3, 1986, each party filed under separate cover what plaintiff refers to as identical protests. CST's protest consists of 251 items which comprise Part II of the Administrative Record. None of those items are at issue in this motion.

The IRS in an October 10, 1986 letter granted CST's request for a conference. In a letter dated November 21, 1986, CST's representative wrote the IRS that, in confirmation of two telephone conversations, there were to be two conferences, one dealing with issues common to the three entities, the other dealing exclusively with CST. In fact, only one conference, lasting six days, was ultimately held. In a telephone conversation between CST's representative and the IRS on December 10, 1986, the IRS scheduled a post-protest conference of right. One of the items the IRS proposed for discussion was whether CST's operation furthers nonexempt commercial interests. The IRS later notified CST that the conference would include CSI and RTC.

On January 14, 1987, representatives of CST, CSI and RTC met with IRS officials for a six-day conference to clarify the issues. In his affidavit for the plaintiff, William C. Walsh recites that he attended the conference of right, and participated in the preliminary arrangements. He recites that during the conference, IRS representatives discussed their belief that CST controlled or influenced other churches of Scientology. He also states that CST's representative stated that there was an issue as to whether CST's activities would be considered exclusively on the basis of its own activities. IRS representatives responded that they believed CST's application was "tied into" the applications of CSI and RTC. CST contends that it advised the IRS at that meeting that it provides no religious services to Scientology parishioners; rather, it conducts activities to preserve and archive Scientology scriptures for posterity. It argued that it is not involved in commercialism.

Following the meeting, the three parties proposed submitting additional information. The Commissioner agreed. CST filed a submission related to its separate activities and tax status on May 5, 1987. On August 3, 1987, CSI and RTC, together, filed the Commercialism Submission, documents relating to the commercial aspects of the Scientology religion. The purpose of the submission was to establish that CSI and RTC operate for religious rather than commercial purposes. It consists of, among other things, Scientology publications, license agreements, audio and video tapes, and blueprints and charts relating to any commercial aspects of the Scientology religion. The parties agree that the Commercialism Submission was filed by CSI and RTC as part of their applications for recognition of their exempt status.

On July 8, 1988, all three parties received adverse exemption rulings from the IRS. The 11–page ruling received by CST recites four reasons: 1) CST's failure to establish that it is "operated exclusively for exempt purposes," in part because of CST's asserted failure to participate in certain financial reviews; 2) that CST is "operated for substantial non-exempt commercial purpose"; 3) that CST is "operated for the benefit of private persons"; and 4) CST had failed to establish that it is "not operated for the benefit of private persons."

There is no question that the Commercialism Submission was not submitted by the plaintiff. The court notes also that throughout the administrative process, CST insisted on being considered independently from RTC and CSI. In addition, a representative of CSI wrote the IRS on October 12, 1988 with regard to questions of confidentiality and implied a similar concern for maintaining a distinction between the sources of submissions. Regardless of whether defendant honored that request, it is clear at the threshold that the Commercialism Submission was not submitted by plaintiff, or on its behalf, and there is no suggestion that plaintiff was under the impression the Commercialism Submission would become or had become credited to CST as part of its own written representations. It should also be noted that CST still maintains that the Commercialism Submission is not relevant to a determination of its exempt status.

CST seeks to include the Commercialism Submission in the Administrative Record. Although it sought separate consideration from CSI and RTC at the administrative level, it contends that the submission is now part of its administrative record because the IRS refused to consider CST's application independent of those submitted by RTC and CSI and because the IRS "actually relied on [the Submission]."

## II. DISCUSSION

Section 7428 of the I.R.C. permits this court, the United States Tax Court and the United States District Court for the District of Columbia to issue a declaratory judgment on the initial qualification of an organization for tax exempt status under I.R.C. § 501(c)(3) if the organization has exhausted its administrative remedies and brought suit within 90 days after a final adverse determination is issued by the IRS.

Review in these types of cases is typically limited to the administrative record. *Easter House v. United States*, 12 Cl.Ct. 476, 482 (1987), *aff'd mem.*, 846 F.2d 78 (Fed.Cir.), *cert. denied*, — U.S. ——, 109 S.Ct. 257, 102 L.Ed.2d 246 (1988). That limitation applies because section 7428 requires a taxpayer to exhaust all administrative remedies. *Church of Visible Intelligence v. United States*, 4 Cl.Ct. 55, 60 (1983). Only on rare occasions, upon a showing of good cause, will the court allow a party to introduce additional evidence which was not part of the administrative record. *Id. See also, Bethel Conservative Mennonite Church v. C.I.R.*, 746 F.2d 388, 392 (7th Cir.1984) (additional evidence allowed upon an allegation that the IRS has "erroneously interpreted or ... redefined" a religion's beliefs); *Easter House*, 12 Cl.Ct. at 482 (showing of "good cause" required).

Judicial review is limited to "whether or not the determination of the Internal Revenue Service was correct on the administrative record before the court and no addi-

tional evidence is to be received." *Animal Protection Institute, Inc. v. United States,* 42 AFTR 2d 78–5234, at 78–5853, 1978 WL 4201 (Ct.Cl.Tr.J.Op. Sept. 19, 1978) (P–H).

CST must carry the burden of proof as to the government's error in the administrative record as filed, and "all insufficient or contradictory evidence must be resolved against [CST]." *St. John's Orphanage, Inc. v. United States,* 16 Cl.Ct. 299, 303 (1989). Under Rule 217 of the rules of the Tax Court, the facts in the administrative record are deemed true and the taxpayer bears the burden of proving the IRS ruling was wrong. *Easter House v. United States,* 12 Cl.Ct. at 482. Only with a full and complete record can CST meet that burden. *Animal Protection Institute, Inc. v. United States,* 42 AFTR 2d 78–5234, at 78–5852. It is consequently important to identify the administrative record in a way that fully permits CST to argue its case.

There are no special rules in the Claims Court governing this type of case. Nevertheless, the legislative history of section 7428 suggests that Congress expected the district court and this court to follow the practices of the Tax Court. *Church of Visible Intelligence,* 4 Cl.Ct. at 60. Rule 210(b)(11) of the Rules of the Tax Court defines the administrative record as follows:

> "Administrative record" includes the request for determination, all documents submitted to the Internal Revenue Service by the applicant in respect of the request for determination, all protests and related papers submitted to the Internal Revenue Service and the applicant in respect of the request for determination or such protests, all pertinent returns filed with the Internal Revenue Service and the notice of determination by the Commissioner.

One of CST's primary arguments is that the Commercialism Submission is a "related paper" within the meaning of Rule 210. There is no question that the submission is related. What is assumed without support,

however, is that the rule extends to materials submitted to IRS by third parties. In the court's view, the least strained reading of the rule is that it contemplates that all the materials will be submitted by either the applicant or the IRS. Defendant cites as analogous support for that construction the decision of the Tax Court in *First Libertarian Church v. Commissioner,* 74 T.C. 396 (1980). In that decision, the court permitted the introduction into the record of materials from a third party. Defendant is correct that the unmistakable import of the case is that the materials became part of the record solely because it was impossible to tell them from materials submitted by the parties and because there had been no objection to their inclusion. It is clear that otherwise they would have been excluded.

Such a construction of the rule makes sense from a practical standpoint. If materials can be submitted by third parties, and since facts in the record are deemed "true," the potential prejudice to an applicant is apparent. The court therefore concludes that the rule presumptively excludes third party materials.

Plaintiff's second argument is that the IRS in fact treated the submission as a part of the CST record. It points first to the fact that in its final adverse ruling as to CST, the IRS made indirect reference to the submission. In that ruling, the Service states that CST's "protest and subsequent admissions" contend that "the provision of goods and services for a fee" was for religious not commercial purposes. CST alleges that the Commercialism Submission is the *only* "subsequent submission" made to the IRS that addresses commercialism, thus establishing that the IRS was referring to that set of documents in the final adverse ruling, and thus treated it as part of the record.

Defendant accurately responds that CST's initial protest mentioned goods and services for a fee, and that CST filed its own supplemental submission on May 5, 1987 along with a transmittal letter, both of which made reference to goods and services for a fee.[1]

---

1. For example, the May 5, 1987 transmittal letter refers to the receipt of "secular assets—

While defendant denies that its ruling was based even in part on the Commercialism Submission, it is willing to concede, solely for purposes of this motion, that the submission influenced the Commissioner's decision in the adverse ruling. It concedes that the same IRS personnel considered the applications of all three organizations. Nevertheless, it asserts that the IRS's awareness of the CSI and RTC Submission does not make it part of the record. In the Government's view, it can even be assumed that the IRS reviewers had the Commercialism Submission before them and considered it in rejecting CST's application. In its response to the Walsh affidavit, defendant concedes that "[s]ince CST claims it collects Scientology 'scriptures' and makes them available to RTC and CSI, and since those organizations use Scientology 'scriptures' in commercial endeavors, the consideration of CST's tax-exempt status must include an inquiry into the activities of RTC and CSI."

Defendant's concession, in any event, is clearly grounded in fact. There should be no question that defendant's decision assumes a close relationship between all three entities. In fact, the initial and final rulings are largely based on an asserted connection between plaintiff and numerous individuals or other Scientology organizations.

Defendant's response to plaintiff's motion is that, regardless of what influenced the Commissioner, the administrative record is limited to those written materials submitted by and relied on by a particular taxpayer. It points out that if, in conversations during the conference of right, facts are discussed which go beyond the then-existing representations, those facts must be put in writing.[2]

Once again, the court agrees with defendant's position. The court must begin with the principle that CST bears the burden of proof in this action. CST must put into the record sufficient materials to warrant the grant of tax exempt status. If the record compiled *lacks* sufficient support to reach that conclusion, CST is responsible for the deficiency. It is up to defendant to argue that its ruling denying exemption finds adequate support *in the record.* CST contends on the one hand that the Commercialism Submission is irrelevant to its position. From that, the court can only conclude that CST believes it can carry its burden without those materials. Defendant, on the other hand, is willing to deny itself access to the submission in responding to plaintiff on the merits. Since there is no question that the document was not submitted by CST, since CST counts the materials to be irrelevant, and since excluding the submission precludes defendant from subsequently relying on it, the court has no alternative but to leave it out of the record.

Accordingly, plaintiff's motion is granted in part and denied in part as follows:

1. The Commercialism Submission (described in defendant's index as Part IV) will not become part of the Administrative Record. The Clerk is directed to return it to plaintiff.

2. The index entry describing Exhibit VI-19 is revised to read as follows:

Letter to IRS dated June 24, 1988 from Church of Spiritual Technology's representative.

3. The motion is denied as to record exhibits I-27, I-31, I-32, I-33, I-34, I-35, I-59 through I-66, I-81, I-83, and I-87 through I-93. Those materials are part of the Administrative Record.

---

which include valuable income-producing properties." The protest refers to "contributions for auditing and training services," as well as references to providing auditing services "in exchange for a fixed donation." The protest also discusses at length caselaw dealing with income-producing activities.

**2.** "Any oral representation of additional facts or modification of facts originally represented or alleged must be reduced to writing." Rev.Proc.

84–86 § 11.02, 1841–1 C.B. 544. 26 C.F.R. § 601.201(n)(9)(v)(d) (1988) also provides:

(d) It is the responsibility of the ... organization to furnish to the National Office, within 21 calendar days after the conference, a written record of any additional data, line of reasoning, precedents, etc., that were proposed by the ... organization and discussed at the conference but were not previously or adequately presented in writing.

4. The motion is granted with respect to documents defendant was unable to locate, with respect to on-site review materials, and to permit plaintiff to substitute legible copies. Accordingly, the following will become part of the Administrative Record: Plaintiff's Items 548, 549, 550 (as Exhibits VI–25, VI–26, and VI–27), 568, 571, 572, and 946 (as Exhibits VI–28, VI–29, VI–30, and VI–31) including materials submitted by plaintiff and identified by the parties as Exhibit III–351; and Plaintiff's Items 586, 650, 658, 760, 780 through 783, 785, 790, 795, 845 through 851, 856, 857, 858, 865, 866, 903 through 906, 911, 916, 924, and 943 (designated as exhibits with the prefix Exhibit VII along with their item number). The parties are still unable to locate Exhibits III–165 and III–168. Plaintiff may move to insert those Exhibits if they are later located. Plaintiff may substitute legible copies of Exhibits III–353 through III–364.

5. The balance of the record previously certified by defendant is accepted as part of the Administrative Record.

6. The parties are directed promptly to arrange with the Clerk to jointly insert the materials listed in ¶ 4, in order, into the record previously submitted by defendant.[3]

With the insertions and substitutions as directed, the materials designated by the court constitute the official Administrative Record.

7. Defendant has indicated it plans to file either a motion to dismiss on jurisdictional grounds or a motion for summary judgment. It is directed to observe the following deadlines. A motion to dismiss on jurisdictional grounds, if any, will be filed on or before November 15, 1989. If defendant elects to file a motion for summary judgment instead, it will be due on or before December 1, 1989. Both parties are directed to use appendices excerpted from the Administrative Record in arguing dispositive motions, with the exception of materials that cannot be conveniently photocopied.

Defendant's response to Plaintiff's Motion To Strike Affirmative Allegations From Defendant's Answer will be due on or before October 30, 1989.

---

**3.** By Order of May 10, 1989, the court allowed defendant to file Exhibits II–155, VII–562, VII–578, VII–579, VII–580, VII–581, VII–600, VII–662, VII–672, VII–680, VII–702, VII–809, VII–886, and VII–925. They may be inserted at the same time and will become part of the Adminis-

trative Record. By that same order, defendant was permitted to file an "addendum to Part VII of the Administrative Record." That addendum will presumptively be part of the Administrative Record; however, plaintiff's right to challenge the inclusion of that addendum is reserved.