**CHURCH OF SPIRITUAL TECHNOLOGY, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 581–88T.**

United States Claims Court.

July 13, 1990.

Monique E. Yingling, with whom were James A. Harris and Kenneth S. Nankin, Washington, D.C., for plaintiff. Thomas C. Spring, of counsel.

David Gustafson, with whom were Asst. Atty. Gen. Shirley D. Peterson, Mildred L. Seidman, and Gerald B. Leedom, Washington, D.C., for defendant.

### OPINION

BRUGGINK, Judge.

This is an action brought pursuant to

Internal Revenue Code Section 7428.[1] That section permits an organization to obtain a declaratory judgment concerning its qualification, under Section 501(c)(3), as an organization exempt from taxation. Pending is plaintiff's motion to declare the final adverse ruling null and void.[2] The motion raises the question of which party bears the burden of proof in determining plaintiff's status. Plaintiff's position is that the final adverse ruling issued by the Internal Revenue Service ("IRS") denying tax-exempt status is null and void, and that therefore the burden of proof is allocated as if no final adverse ruling had been issued. If plaintiff is correct, defendant would bear the burden of establishing the reasons why plaintiff should not be recognized as tax exempt. Because of the importance of this issue to the merits of the complaint, the issue has been isolated for preliminary resolution. For the reasons which follow, the court agrees with defendant that plaintiff bears the burden of proof.

## BACKGROUND

The parties have filed proposed findings of uncontroverted fact.[3] Insofar as is relevant to disposing of the pending motion with respect to burden of proof, the facts are not materially in dispute.

In its complaint, plaintiff Church of Spiritual Technology ("CST") states that it is a church of the Scientology religion. It recites that its purpose is to preserve and protect the scriptures of the Scientology faith for all generations. The scriptures of Scientology consist of the written and recorded spoken words of L. Ron Hubbard, the founder of Scientology. CST makes archival-quality copies of scriptures, preserves them, and stores them.

CST applied for recognition of exempt status on August 26, 1983. At the time of CST's application, Church of Scientology International ("CSI")[4] and Religious Technology Center ("RTC")[5] had exemption applications pending before the IRS. On January 7, 1986, the IRS issued an initial adverse determination letter concerning CST. On the same day, virtually identical letters were issued to CSI and RTC. In CST's letter the IRS expressed its conclusion that the organization is not operated exclusively for exempt purposes. Specifically, it stated, *inter alia*, that CST is "operated in a manner indistinguishable from that of an ordinary commercial enterprise." The initial letter also recites that CST had not supplied "concrete and detailed" information in response to IRS' questions.

On January 24, 1986 L. Ron Hubbard died, leaving the bulk of his estate to CST, conditioned on its being recognized as an exempt organization. On July 3, 1986, CST, CSI and RTC filed identical protests of the initial adverse determination letters. On July 8, 1988, the IRS issued final adverse rulings with respect to CST. Similar rulings were made as to the other Scientology entities.

1. All references are to the Internal Revenue Code of 1988 (26 U.S.C.).

2. Defendant filed a motion to dismiss on November 22, 1989, based on the argument that plaintiff had failed to exhaust its administrative remedies, and that the court was thus without jurisdiction. Plaintiff responded with a cross motion for summary judgment, seeking a declaration that the IRS Final Adverse Ruling was null and void. As part of that cross motion, plaintiff contends that the IRS bears the burden of proof to sustain the grounds for the adverse ruling. By order of February 13, 1990, the court *severed the cross motion and deferred* further action on it until resolution of the motion to dismiss. The defendant's motion was denied on May 3, 1990. The cross motion was simultaneously reactivated solely with respect to the question of which party bears the burden of proof. That issue has been fully briefed, and further argument is deemed unnecessary.

3. By order of February 13, 1990, the court directed that all dispositive motions follow the procedures of RUSCC 56 with respect to use of proposed findings of fact. By opinion dated October 2, 1989, the court designated the Administrative Record from which the parties may draw factual support. 18 Cl.Ct. 247 (1989).

4. CSI is the "Mother Church" of the Scientology religion.

5. RTC is a California nonprofit religious corporation formed for the purpose of ensuring orthodox practice of the Scientology faith. RTC supervises CSI and subordinate churches of Scientology.

Four reasons were given for the ruling as to CST. Solely for the purposes of ruling with regard to determination of which party bears the burden of proof, defendant is willing to assume that the grounds given by the IRS for rejecting exempt status cannot be supported in the record, that IRS employees were biased against the Scientology religion, and that the procedures followed in the course of the ruling deviated from those outlined in the Internal Revenue Manual.

## DISCUSSION

Tax Court Rule 217(c)(2)(i) directs that the petitioner in a Section 7428 declaratory judgment proceeding has the burden of proof as to grounds set out in the notice of determination.[6] The parties are agreed that the Government bears the burden of proof with respect to grounds not raised in a determination letter.[7] In this case there was a determination letter. By its terms, Rule 217 would thus seem to dictate that CST bears the burden of proof with respect to those reasons advanced in the IRS final determination letter. It is plaintiff's position, however, that for purposes of fixing which side bears the burden of proof, the determination letter should be treated as null and void. Two reasons are advanced in support of plaintiff's position. First, it contends that the IRS discriminates against the Scientology religion. Second, it contends that the IRS failed to follow its own procedures in issuing the final ruling. As defendant has conceded for purposes of this motion that there was discrimination and a failure to follow procedures, plaintiff concludes that the court should treat the final adverse ruling as null and void.

CST has not cited the court to any decisions directly supporting its position. It instead places primary reliance on the decision of the district court in *Center on*

*Corporate Responsibility v. Shultz*, 368 F.Supp. 863 (D.D.C.1973). That action was one for a refund of withholding taxes. The plaintiff alleged that it was tax exempt pursuant to Section 501(c)(3). There were three elements of the holding in *Center on Corporate Responsibility*. The first was that sanctions were appropriate because of willful failure by defendants to comply with discovery orders. The sanction imposed was that defendants could not challenge plaintiff's assertion that it was "singled out for selective treatment for political, ideological and other improper reasons." *Id.* at 871–73. In light of that fact, the "validity of the Service's ruling" was "nullifie[d]" and no basis thus existed for denying exempt status. *Id.* at 873. The second holding was that, after considering the merits, plaintiff met the requirements necessary for exempt status. The arguments advanced by the IRS were separately addressed and rejected. *Id.* at 873–78. As the court points out, the second holding was theoretically unnecessary in light of the first. *Id.* at 873. The final holding of the case was that the court had the power to enjoin the IRS from denying tax-exempt status to the plaintiff so long as its operations were maintained as explained to the court. *Id.* at 880.

*Center on Corporate Responsibility* arose in a different procedural context than the case at bar. It was not an action under Section 7428, which did not come into existence until 1976.[8] Rather, it arose as a refund proceeding. There was no occasion, therefore, for the court to discuss whether political abuse would void a final adverse ruling and thereby shift the burden of proof in an action commenced pursuant to Section 7428. Plaintiff argues, nevertheless, that if political abuse "nullified" the IRS ruling in that action, by analogy the court here should treat the final adverse ruling as if it had never been issued. That

---

6. There are no special rules governing tax matters in this court. The court has held, however, that Congress expected the Claims Court and the district courts to follow the practices of the Tax Court. *Church of Spiritual Technology v. United States,* 18 Cl.Ct. 247, 250 (1989); *Church of the Visible Intelligence v. United States,* 4 Cl.Ct. 55, 60 (1983).

7. Tax Court Rule 217(c)(2)(ii).

8. Section 7428 was added by Pub.L. 94–455, Title XIII, § 1306(a), 90 Stat. 1717 (1976).

is far too great a leap to make, however. It is clear from the context of the *Center on Corporate Responsibility* decision that the term "nullified" was not used as a term of art in a procedural sense. The plain import of that aspect of the holding is that the Government's reasoning in support of an exemption denial was eliminated.

The inapplicability of CST's argument is highlighted by its reliance on other cases arising in circumstances totally unrelated to the present action. *United States v. Caceres*, 440 U.S. 741, 99 S.Ct. 1465, 59 L.Ed.2d 733 (1979), for example, involved a criminal prosecution for bribing a revenue officer. Plaintiff relies on that decision for the proposition that an agency must obey its own regulations. *Id.* at 751 n. 14, 99 S.Ct. at 1471 n. 14. *Morton v. Ruiz*, 415 U.S. 199, 94 S.Ct. 1055, 39 L.Ed.2d 270 (1974), involving a claim for payment of benefits, and *Oglala Sioux Tribe of Indians v. Andrus*, 603 F.2d 707 (8th Cir.1979), involving an action to prevent transfer of an employee of the Bureau of Indian Affairs, are to the same effect. That proposition, however, does not assist plaintiff here. The decisions relied upon by CST[9] involve determinations on the merits of a claim. The courts did not treat the relevant agency actions as if, from a procedural standpoint, they did not exist. Rather, the courts' holdings that there had been a failure to comply with regulations became a part of the rationale in support of granting relief on the underlying claim.

In the present action, on the contrary, Tax Court Rule 217 addresses a very specific matter of tax administration—which side bears the burden of proof. If decisions relied upon by plaintiff were analogized to the present case, CST would be free to argue, as did the plaintiffs in those decisions, that the agency action (the adverse determination letter) is invalid insofar as its rationale is undercut by bias or failure to follow agency procedures. There is nothing within the decisions cited by plaintiff, however, which supports the proposition that an administrative determination should be treated as if it had never been issued.

It bears repetition, in view of the arguments raised in plaintiff's motion to shift the burden of proof, to point out that this action raises a single question: Is plaintiff an organization described in Section 501(c)(3) which is exempt from tax under Section 501(a)? It is appropriate, therefore, to test the relevance of plaintiff's arguments in light of the limited focus of the court's inquiry under Section 7428. That determination is normally based on the record plaintiff developed at the administrative level. To the extent there was animus, ill-will or discrimination in the ruling itself, that impropriety cannot provide analytical support for the Government's position. The court's ruling will be drawn from the facts established in the record. If the adverse ruling was affected in the way plaintiff argues, plaintiff's task should be concomitantly easier.

The court recognizes that plaintiff also alleges that there were procedural irregularities at the administrative level. Some of those allegations touch on the plaintiff's ability to develop an administrative record. CST contends, for example, that it was prevented at one point from adding certain information to the record, and that the final determination was based on information not made available to it. The court has had occasion already in this action to discuss the contents of the administrative record, and noted that only under rare circumstances can additional evidence be introduced during court proceedings. *Church of Spiritual Technology v. United States*, 18 Cl.Ct. 247, 249 (1989), *citing Bethel Conservative Mennonite Church v. C.I.R.*, 746 F.2d 388, 392 (7th Cir.1984), and *Church of Visible Intelligence v. United States*, 4 Cl.Ct. 55, 60 (1983). Without reopening issues previously resolved, the

---

**9.** This applies as well to *Lennon v. INS*, 527 F.2d 187 (2d Cir.1975) (proceeding to determine whether John Lennon was an excludable alien), and *SEC v. Wheeling–Pittsburgh Steel Corp.*, 482 F.Supp. 555 (W.D.Pa.1979) (action to enforce an administrative subpoena). The political harassment found in those decisions was cited as a reason for granting or denying relief on the underlying merits issue.

**766**

court concludes that the best context for evaluating arguments that go to the integrity and fairness of the record is upon consideration of the merits. It would be more appropriate in that context to evaluate the prejudicial effect, if any, of the alleged procedural violations, and whether it would be appropriate to remedy a violation by adjusting the record.

### CONCLUSION

The plaintiff's motion to declare the final adverse ruling null and void is denied. Plaintiff will bear the burden of proof with respect to those reasons for denial of recognition of exempt status set out in the final adverse determination letter. The parties are directed to file a joint status report on or before July 27, 1990 proposing further proceedings.