SPIRITUAL OUTREACH SOCIETY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Spiritual Outreach Soc. v. Commissioner
Docket No. 23387-87X
United States Tax Court
T.C. Memo 1990-41; 1990 Tax Ct. Memo LEXIS 41; 58 T.C.M. (CCH) 1284; T.C.M. (RIA) 90041; January 23, 1990
Michael A. Markenson, for the petitioner. William I. Miller, for the respondent. TANNENWALD
MEMORANDUM OPINION TANNENWALD, Judge: Respondent determined that Spiritual Outreach Society (petitioner) was a private foundation within the meaning of section 509(a). [1] Having exhausted its administrative remedies, petitioner is before this Court, pursuant to section 7428, seeking a declaratory judgment as to the correctness of *44 respondent's action. The issues for decision are whether respondent properly determined that petitioner does not qualify as a church within the meaning of sections 509(a)(1) and 170(b)(1)(A)(i) and whether respondent properly determined that petitioner is not a publicly supported organization as described in sections 509(a)(1) and 170(b)(1)(A)(vi). This case was submitted under Rule 122. The parties have filed a joint stipulation as to the administrative record pursuant to Rule 217(b)(1). The evidentiary facts and representations contained in the administrative record are presumed to be true for the purpose of this proceeding. Petitioner was incorporated on December 5, 1978, under the laws of Missouri, by Thomas H. Ward, Dennis R. Hammond, and Michael A. Markenson. Petitioner's initial board of directors and officers included Thomas H. Ward, president, Richard M. Ward, vice president, and James E. Johnson, treasurer. Petitioner's purposes, as set forth *45 in Articles of Incorporation, were as follows: ARTICLE SIX
The corporation is formed for the following religious purposes: (1) To spread the message of God's Love and Hope throughout the world; to bring all people to an awareness of the similarities present in the world's different religions and of the fact that the different religions of the world are but alternate pathways to a single goal - the one Supreme Being, God; that, though the world's different religions worship God in different ways, the object of that worship is, in each instance, the one, omnipotent God. (2) To provide a place in which religious teachers who believe in the existence of God may espouse their views and teachings. (3) To provide a place in which those who believe in the existence of God may present religious music to any persons interested in hearing such. (4) To provide a place in which those who believe or are interested in the existence of God may listen to the exposition of the various religious teachings and religious music described in Sections 2 and 3, above. (5) To distribute books, pamphlets, literature, records, tape recordings and other miscellaneous items relating to the various *46 religious teachings and religious music described in Sections 2 and 3, above and to provide a library where such may be borrowed by interested persons. (6) To write, print and distribute a newspaper relating to the various religious teachings and religious music described in Sections 2 and 3, above. (7) To disseminate the various religious teachings and religious music described in Sections 2 and 3, above, through whatever medium or media, including the public media, may be available. (8) To provide a campsite in which those interested in the various religious teachings and religious music described in Sections 2 and 3 above, might camp on a temporary basis when visiting to take part in the activities of the Society. (9) To provide various commodities to the needy and thereby spread the teachings of God. (10) To exercise any and all powers necessary, convenient or proper to carry into effect any of the foregoing purposes and for the execution of said purposes, the corporation shall have all powers granted to corporations formed under "The General Not For Profit Corporation Law of Missouri," as now enacted or hereafter amended. Petitioner's Articles of Incorporation further *47 provided: ARTICLE SEVEN
The corporation shall have authority to issue one hundred (100) certificates of membership at a price of One and No/100 Dollar ($ 1.00) each, subject to the following terms and conditions: (1) No membership certificate shall be transferable other than by testamentary succession, except with the affirmative vote of two-thirds of the membership. (2) The holders of membership certificates shall be entitled to cast one (1) vote at the election of directors of the corporation for each membership certificate held by such holders. * * * In March 1979, petitioner applied for exemption as an organization described in section 501(c)(3) by filing Form 1023, on which it claimed it was a church. Petitioner's counsel later requested that its application be treated as an application as a religious organization rather than a church. On February 27, 1980, respondent issued petitioner an advance determination letter granting it tax exempt status until November 30, 1983. This letter also stated that because petitioner was a newly created organization, a final determination of its foundational status under section 509(a) was being withheld but that it could reasonably *48 be expected to be a publicly supported organization described in sections 509(a)(1) and 170(b)(1)(A)(vi). On May 9, 1984, respondent issued a favorable determination letter stating that petitioner was not a private foundation within the meaning of section 509(a) because it was an organization of the type described in sections 509(a)(1) and 170(b)(1)(A)(vi). On February 27, 1984, petitioner revived the request for classification as a church. On April 23, 1987, respondent issued a final adverse determination letter concluding that petitioner was not a church and was not a "public charity." Based upon this adverse determination, petitioner instituted the instant proceeding. At the outset, it is important to note that respondent does not challenge petitioner's qualification as a religious organization under section 501(c)(3). Rather, respondent asserts that petitioner is a private foundation within the meaning of section 509(a)[2] and that petitioner fails to establish itself within the exceptions set forth in section 509(a)(1) for a church, under section 170(b)(1)(A)(i), and a publicly supported charity, under section 170(b)(1)(A)(vi). [3] *49 Petitioner bears the burden of proof. Rule 217(c)(2)(ii); Foundation of Understanding v. Commissioner, 88 T.C. 1341, 1356 (1987). *50 We first address respondent's determination that petitioner is not a church. Respondent contends that petitioner does not qualify as a church because it does not satisfy the associational requirement and because it fails to meet the bulk of the 14 criteria used by respondent to identify organizations which qualify for church status. [4] Petitioner counters by contending that it satisfies the associational test and most of the 14 criteria. We agree with respondent. *51 As we stated in Foundation of Understanding v. Commissioner, 88 T.C. at 1356: "The term 'church' is not defined in the Internal Revenue Code. Nor are the regulations promulgated under section 170 helpful in deciding what is a church. They simply restate the statutory language of section 170(b)(1)(A)(i). Sec. 1.170A-9(a), Income Tax Regs. It seems clear, however, that Congress intended that the word 'church' have a more restrictive definition than the term 'religious organization.'" (Fn. ref. omitted.) Although fundamental to determining whether an organization is a church, religious purposes alone do not serve to establish it as a church. Equally important are the means by which its religious purposes are accomplished. We take a common sense approach and posit our conclusion on the meaning of "church" in ordinary, everyday parlance. The word "church" implies that an otherwise qualified organization bring people together as the principal means of accomplishing its purpose. Chapman v. Commissioner, 48 T.C. 358, 367 (1967) (Tannenwald, J., concurring). See also *52 Foundation of Understanding v. Commissioner, 88 T.C. at 1357, quoting from American Guidance Foundation , Inc. v. United States, 490 F. Supp 304, 306 (D. D.C. 1980), affd. without opinion (D.C. Cir., July 10, 1981)("At a minimum, a church includes a body of believers or communicants that assembles regularly in order to worship").[5] Thus, a church is a cohesive group of individuals who join together to accomplish the religious purposes of mutually held beliefs. "In other words, a church's principal means of accomplishing its religious purpose must be to assemble regularly a group of individuals related by common worship and faith. * * * To qualify as a church, an organization must serve an associational role in accomplishing its religious purposes." Church of Eternal Life v. Commissioner, 86 T.C. 916, 924 (1986). Petitioner has failed to establish that it satisfies the associational requirement. Petitioner maintained an outdoor amphitheater on its grounds. During June through October 1, 1983, petitioner held bimonthly musical *53 programs at the amphitheater, for a total of approximately 8 events during 1983. Also, similar programs were held from April 28 through October 13, 1984, for a total of 12 events during this year. No other regularly scheduled religious or musical services were held during these years. Petitioner held its bimonthly musical programs on Saturdays so that people could attend their own churches on Sundays. While it did not charge admission as such to these events, there was a published schedule of "donations" for adults, senior citizens, and children which, under the circumstances herein, are akin to charges for admission, particularly since there is nothing in the record to show that a person could attend the event without making the appropriate "donation." During 1983 and 1984 petitioner held various other sporadic events and gatherings. During the summer of 1983, several retreats were held on the church grounds wherein followers of different religions met for the purpose of meditation study and spiritual advancement. In July 1983, a revival was conducted by guest ministers. In addition, during 1983 and 1984, petitioner made use of its outdoor amphitheater to hold a total of *54 three other music festivals open to the public. The musical festival and revival held on May 28 and May 29, 1983, attracted approximately 300 persons. The festival held on May 26 and 27, 1984, attracted several hundred people, and the festival held on September 1, 1984, attracted at least 1,400 people. A typical regularly scheduled bimonthly program consisted of two or three hours of singing and playing gospel music. Congregational singing was always a part of the program. A typical summer special event included a variety of religious music featuring a nationally known individual or group. A minister always opened and closed the program with prayer. Petitioner maintained a chapel on its grounds which was open to the public daily for meditation and individual prayer. Persons attending the programs at the outdoor amphitheater also utilized the building for such meditation and prayer as did others from time to time during the year. No other religious services were conducted in the chapel. Two wedding ceremonies were conducted in petitioner's chapel during 1983 and 3 were conducted during 1984 by ministers from guest churches. *55 Although we have declined to adopt respondent's 14 criteria as a test for determining what constitutes a church, we have stated that they are helpful in deciding what is essentially a factual question. Foundation ofUnderstanding v. Commissioner, 88 T.C. at 1358. We are not unmindful that there are some factors militating in petitioner's favor, including the fact that petitioner has a distinct legal existence and a building used for meditation and prayer. Further, we are aware that petitioner is a newly-created rural organization and that some of the stated criteria may therefore be inapplicable. We note, however, that petitioner has no ecclesiastical government, reflecting the belief of Thomas Ward that "Jesus Christ's whole life and teaching contradicted ecclesiastical government and forms, procedures, liturgy, formalities, and ceremonies and emphasized the spirit, and not the letter, of the law; indeed, Jesus Christ had no requirement for meetings, dress, and ceremonies and had no chain of command." Petitioner does not have its own literature, songs, or prayers; rather, it uses those of world-wide recognized religions. This type of activity does not constitute *56 a recognized creed and form of worship. Petitioner does not have an organization of ordained ministers nor does it have a school for the preparation of its ministers. Petitioner does not have a Sunday school for the religious instruction of the young. Nor does the record reflect that petitioner has ever had an ordained minister of its own. While a definitive form of ecclesiastical government or organizational structure may not be required, we are not persuaded that musical festivals and revivals (even if involving principally gospel singing, as petitioner's activities along these lines did) and gatherings for individual meditation and prayer by persons who do not regularly come together as a congregation for such purposes should be held to satisfy the cohesiveness factor which we think is an essential ingredient of a "church." See p. 8, supra. This critical associational factor was present in our resolution of the church issue, which we described as a "close question," in Foundation of Understanding v. Commissioner, supra, as were other factors not present herein. See *57 88 T.C. at 1359-1361. We hold that petitioner has not carried its burden of proof that it is entitled to classification as a church under sections 509(a) and 170(b)(1)(A)(i). See note 4, supra. We next address the issue of whether respondent properly determined that petitioner was a private foundation within the meaning of section 509(a) because it does not fit within the exception of section 170(b)(1)(A)(vi). Under section 1.170A-9(e)(2), Income Tax Regs., an organization is to be treated as publicly supported if the contributions which it normally receives from governmental units and contributions from the general public equal at least 33-1/3 percent of the support the organization normally receives. An organization may also qualify as a publicly supported organization if it meets the facts and circumstances test set forth in section 1.170A-9(e)(3), Income Tax Regs. Petitioner does not claim to satisfy the mechanical 33-1/3 percent test; rather, it argues that it qualifies as a publicly supported organization under the facts and circumstances test. We disagree. Under the facts and circumstances test, an organization must: (1) receive at least 10 percent *58 of its support from governmental or public contributions ( sec. 1.170A-9(e)(3)(i), Income Tax Regs.); (2) be so organized and operated as to attract new and additional public support on a continuous basis ( sec. 1.170A-9(e)(3)(ii), Income Tax Regs.); and (3) satisfy some or all of a number of factors relating to the percentage of financial support ( sec. 1.170A-9(e)(3)(iii), Income Tax Regs.), sources of support ( sec. 1.170A-9(e)(3)(iv), Income Tax Regs.), representative governing body ( sec. 1.170A-9(e)(3)(v), Income Tax Regs.), availability of public facilities or services and public participation in programs or policies ( sec. 1.170A-9(e)(3)(vi), Income Tax Regs.), and other factors pertinent to membership organizations (sec. 1.170A-9(e)(3)(vii), Income Tam Regs.). In determining whether petitioner satisfies the 10 percent public support requirement of section 1.170A-9(e)(3)(i), Income Tax Regs., contributions by an individual, trust, or corporation shall be taken into account, in determining the numerator of the applicable fraction, only to the extent that the total amount of the contributions by any such individual, trust, or corporation does not exceed 2 percent of the organization's *59 total support for the prescribed time period; all contributions made by a donor and by any person or persons standing in a relationship to the donor which is described in section 4946 (a)(1)(C) through (G) and the regulations thereunder are treated as made by one person. Sec. 1.170A-9(e)(6), Income Tax Regs. Grouping related persons into three groups and utilizing the prescribed periods designated in section 1.170A-9(e)(4), Income Tax Regs., respondent has recalculated his original figures and has determined that petitioner received 8.67 percent from public support for taxable year ending November 30, 1983, 10.72 percent from public support for taxable year ending November 30, 1984, and 10.74 percent from public support for taxable year ending November 30, 1985. Petitioner has not made any meaningful challenge to respondent's revised calculations and therefore we conclude that petitioner has failed to satisfy the 10 percent public support requirement for its 1983 taxable year and has scarcely satisfied this requirement for its 1984 and 1985 taxable years. Petitioner fails to satisfy the second requirement of the facts and circumstances test, namely, that it be so organized and *60 operated as to attract new and additional public or governmental support on a continuous basis. Petitioner has made no effort to solicit funds from the general public or the community other than to give notice through the local media of its regularly scheduled summer musical programs and special events. In this regard, we recognize that there were requested donations for both the regularly scheduled bimonthly programs and the special presentations. However, we think that this is not the type of public support embodied in the regulations, and, as we have previously indicated, see p. 9, supra, is more accurately characterized as an admission price. We recognize that petitioner's building was available to the public for silent worship and devotions and its library (consisting of religious books of various faiths, records, and tape recorded sermons and lectures) was open to the public. But these elements are insufficient to support a conclusion that, under the facts and circumstances test, petitioner was a publicly supported organization, particularly when we take into account the facts that petitioner has satisfied the 10 percent public and government support requirement by *61 a narrow margin and received a substantial amount of its support from three families or their businesses. We hold that respondent's determination that petitioner is a private foundation should be sustained for the foregoing reasons. Decision will be entered for the respondent. Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code as amended and in effect during the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Such section provided in pertinent part: (a) General Rule. -- For purposes of this title, the term "private foundation" means a domestic or foreign organization described in section 501(c)(3) other than -- (1) an organization described in section 170(b)(1)(A) (other than in clauses (vii) and (viii) [which have no relevancy to the instant case]); * * * ↩
3. Sec. 170(b)(1)(A)(i) and (vi) provided: (b) Percentage Limitations. -- (1) Individuals. -- In the case of an individual, the deduction provided in subsection (a) shall be limited as provided in the succeeding subparagraphs. (A) General Rule. -- Any charitable contribution to -- (i) a church or a convention or association of churches, * * * (vi) an organization referred to in subsection (c)(2) which normally receives a substantial part of its support (exclusive of income received in the exercise or performance by such organization of its charitable, educational, or other purpose or function constituting the basis for its exemption under section 501(a)) from a governmental unit referred to in subsection (c)(1) or from direct or indirect contributions from the general public. * * *↩
4. These criteria were first announced in a speech by former Commissioner Jerome Kurtz. See Remarks of IRS Commissioner Jerome Kurtz, PLI Seventh Biennial Conference on Tax Planning (Jan. 9, 1978), reprinted in Fed. Taxes (P-H) par. 54,820 (1978). These criteria include: (1) a distinct legal existence; (2) a recognized creed and form of worship; (3) a definite and distinct ecclesiastical government; (4) a formal code of doctrine and discipline; (5) a distinct religious history; (6) a membership not associated with any other church or denomination; (7) an organization of ordained ministers; (8) ordained ministers selected after completing prescribed studies; (9) a literature of its own; (10) established places of worship; (11) regular congregations; (12) regular religious services; (13) Sunday schools for religious instruction of the young; and (14) schools for the preparation of its ministers. [See Internal Revenue Manual 7(10)69, Exempt Organizations Examination Guidelines Handbook 321.3(3)(Apr. 5, 1982).]↩
5. See also First Church of In Theo v. Commissioner, T.C. Memo. 1989-16↩.