**SPIRITUAL OUTREACH
SOCIETY, Appellant,**

v.

**COMMISSIONER OF INTERNAL
REVENUE, Appellee.**

No. 90–1501.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 15, 1990.

Decided Feb. 27, 1991.

Micahel A. Markenson, St. Louis, Mo., for appellant.

---

Patricia Bowman, Washington, D.C., for appellee.

Before JOHN R. GIBSON, Circuit Judge, HENLEY, Senior Circuit Judge, and CONMY,* Chief District Judge.

HENLEY, Senior Circuit Judge.

Spiritual Outreach Society (SOS) appeals the tax court's decision denying its claim for status as a church under I.R.C. §§ 509(a)(1) and 170(b)(1)(A)(i) (1990).[1] *Spiritual Outreach Society v. Commissioner*, Tax Ct.Mem.Dec. (CCH) 1990-41 (1990). On appeal, SOS contends that the tax court erred when it found that SOS neither fulfilled an associational role required of churches nor satisfied the listed requirements used by the IRS to determine church status. We affirm.

FACTS

The case was submitted to the tax court on a stipulated record. Accordingly, our discussion of the facts is limited to those material and relevant to our decision.

SOS was incorporated on December 5, 1978, as a Missouri not-for-profit corporation. The articles of incorporation setting out its purposes state:

ARTICLE SIX

The corporation is formed for the following religious purposes:

(1) To spread the message of God's Love and Hope throughout the world; to bring all people to an awareness of the similarities present in the world's different religions and of the fact that the different religions of the world are but alternative pathways to a single goal— the one Supreme Being, God; that, though the world's different religions worship God in different ways, the object of that worship is, in each instance, the one, omnipotent God.

(2) To provide a place in which religious teachers who believe in the exist-ence of God may espouse their views and teachings.

(3) To provide a place in which those who believe in the existence of God may present religious music to any persons interested in hearing such.

(4) To provide a place in which those who believe or are interested in the existence of God may listen to the exposition of the various religious teachings and religious music described in Sections 2 and 3, above.

(5) To distribute books, pamphlets, literature, records, tape recordings and other miscellaneous items relating to the various religious teachings and religious music described in Sections 2 and 3, above and to provide a library where such may be borrowed by interested persons.

(6) To write, print and distribute a newspaper relating to the various religious teachings and religious music described in Sections 2 and 3, above.

(7) To disseminate the various religious teachings and religious music described in Sections 2 and 3, above, through whatever medium or media, including the public media, may be available.

(8) To provide a campsite in which those interested in the various religious teachings and religious music described in Sections 2 and 3 above, might camp on a temporary basis when visiting to take part in the activities of the Society.

(9) To provide various commodities to the needy and thereby spread the teachings of God.

(10) To exercise any and all powers necessary, convenient or proper to carry into effect any of the foregoing purposes and for the execution of said purposes, the corporation shall have all powers granted to corporations formed under "The General Not For Profit Corporation Law of Missouri," as now enacted or hereafter amended.

---

* The Honorable Patrick A. Conmy, Chief Judge, United States District Court, District of North Dakota, sitting by designation.

1. All references to section provisions refer to the Internal Revenue Code, hereinafter referred to as the code.

In an effort to achieve these goals, SOS purchased some land and built an amphitheater. SOS then began holding bi-monthly programs at the amphitheater during the months that weather would permit outdoor gatherings. These programs were held on Saturdays in part to avoid conflict with the participant's church attendance on Sunday. While the programs opened and closed with a minister leading a prayer, the bulk of each event consisted of the presentation of gospel music and congregational singing. Often a nationally known person or group would be featured. These events attracted an increasing number of people. A program held on May 28 and 29 in 1983 was attended by approximately 300 people while a program held on May 26 and 27 in 1984 attracted more than 1400. In addition to these programs, retreats were held on the property. These retreats involved people of different religions and were held for the purpose of meditation, study and spiritual advancement.

SOS also constructed a small, unheated chapel on its property. The chapel was available for unsupervised meditational activities and individual prayer. Organized worship did not take place in the chapel. There were a few weddings held in the chapel, always performed by ministers from other churches. The chapel also served as a storage area for items which are distributed to the needy as well as various religious materials which are available for review by interested persons.

In March, 1979 SOS applied to the Internal Revenue Service (appellee) for tax exemption by claiming it was a church entitled to exemption under § 501(c)(3).[2] SOS later asked appellee to treat the application as requesting the designation of a religious organization, as defined by § 501(c)(3), rather than a church. Appellee obliged and issued SOS notice that it would be given temporary tax exempt status while the application process proceeded. After appel-

lee issued a favorable ruling that SOS was a religious organization of the type described in §§ 509(a) and 170(b)(1)(A)(vi), SOS renewed its request to be classified as a church. Appellee issued a final ruling that SOS was neither a church nor a publicly supported charity. SOS appealed this decision to the tax court, which affirmed appellee's ruling on both issues. SOS then initiated this appeal.

SOS presented two issues to the tax court. One was the question whether for tax purposes it was a church. The other was the question whether it was a publicly supported charity. SOS states in its brief that it no longer seeks classification as a publicly funded charity. This issue is therefore not before us. *Rang v. Hartford Variable Annuity Life Ins. Co.*, 908 F.2d 380 (8th Cir.1990). The only issue we need to resolve is whether SOS constitutes a church for federal tax purposes.

■ We have jurisdiction over this case pursuant to § 7482. The standard of review, however, is not so easily ascertainable. SOS makes no mention of this issue in its brief. Appellee asserts that the tax court's decision was one of fact and supports its assertion with citations to *Ohio Teamsters Educational & Safety Training Trust v. Commissioner*, 692 F.2d 432 (6th Cir.1982), and *Plumstead Theatre Society, Inc. v. Commissioner*, 675 F.2d 244 (9th Cir.1982). Both cases dealt with the tax court making a determination on the tax exempt status of organizations under § 501(c)(3). However, neither case involved a stipulated record, and we believe that this fact is significant in our determination of the appropriate standard of review.

"We review de novo the applicability of tax benefit principles to the stipulated facts." *Schwartz Rojas v. Commissioner*, 901 F.2d 810, 812 (9th Cir.1990) (quoting *Stern v. Commissioner*, 747 F.2d 555, 557 (9th Cir.1984)). Because we review conclu-

---

**2.** It is important to set out carefully what is at issue. Respondent has determined SOS is a tax-exempt religious organization under § 501(c)(3). Appellant's status as a § 501(c)(3) organization is not at issue. Therefore, SOS is exempt from the federal income tax. However,

there are additional tax benefits which inure to an organization if it is determined to be a church. These benefits include exemption from certain excise taxes and, perhaps most importantly, exemption from annual informational filings.

sions of law by the tax court under a de novo standard, *Steen v. Commissioner*, 923 F.2d 603, 606 (8th Cir.1991), it appears that the de novo standard is proper for review of a case which was submitted on a stipulated record without trial.

▇ The tax court ruled against SOS because it found that SOS failed to fulfill an associational requirement and certain factual requirements which are discussed more fully below. We agree with the tax court that SOS fails to satisfy the factual requirements. Therefore, we do not reach the associational requirement issue.

Deciding what constitutes a church for federal tax purposes is not an easy task. There is very little guidance for courts to use in making decisions.

> While federal tax authorities must apply the word church in a variety of contexts, there is no ready definition.... It is generally accepted that Congress intended a more restricted definition for a 'church' than for a 'religious organization,' but probably because of first amendment considerations it has provided virtually no guidance on this distinction.

*Church of the Visible Intelligence That Governs the Universe v. United States*, 4 Cl.Ct. 55 (1983) (citations omitted).

▇ In an apparent attempt to fill this void, the Internal Revenue Service has announced fourteen criteria which it uses as factual requirements for an organization to constitute a church for federal tax purposes. In a speech, former Commissioner Jerome Kurtz announced fourteen criteria which the Internal Revenue Service uses as a framework for its decisions. The criteria are as follows:

(1) a distinct legal existence;

(2) a recognized creed and form of worship;

(3) a definite and distinct ecclesiastical government;

(4) a formal code of doctrine and discipline;

(5) a distinct religious history;

(6) a membership not associated with any other church or denomination;

(7) an organization of ordained ministers;

(8) ordained ministers selected after completing prescribed studies;

(9) a literature of its own;

(10) established places of worship;

(11) regular congregations;

(12) regular religious services;

(13) Sunday schools for religious instruction of the young; and

(14) schools for the preparation of its ministers.

See Remarks of IRS Commissioner Jerome Kurtz, PLI Seventh Biennial Conference on Tax Planning (Jan. 9, 1978), reprinted in Fed. Taxes (P–H) ¶ 54,820 (1978).

Though a difficult procedure, this court has had at least one other occasion to determine church status. In *Lutheran Social Services of Minn. v. United States*, 758 F.2d 1283 (8th Cir.1985) (hereinafter *LSS*), this court, in part, determined that a particular service organization (LSS) was not a church within the meaning of § 6033(a)(2)(A)(i). The court based its decision on the factual requirements of the fourteen criteria and a Treasury regulation. Noting that neither § 6033 nor its accompanying Treasury regulations define the term "church," the court examined part of a Treasury regulation explaining § 511. Because § 511 is not at issue in our case, we decline to use the Treasury regulations in making our determination.[3]

---

**3.** Section 511 imposes a tax on unrelated business income of certain organizations. Because LSS was affiliated with a church, the unrelated business income tax was a potential issue in the case. In our case, however, the unrelated business income tax is not at issue, because SOS is claiming church status on its own right rather than as an organization affiliated with a church.

There is additional support for our decision. The IRS issued a proposed Treasury regulation

for § 170, a section which is at issue in our case. The proposed regulation contained a cross-reference to the definition of church contained in the regulations under § 511. Because of objections to the definition by the public, the cross-reference was deleted, and the regulation was issued in a different form. *Foundation of Human Understanding v. Commissioner*, 88 T.C. 1341, 1356 n. 5 (1987); *see also* Whelan, *"Church" in the Internal Revenue Code: The*

This leaves the fourteen criteria. While we did not explicitly so state in *LSS,* we view the fourteen criteria as a guide, helpful in deciding what constitutes a church.[4] Each criterion need not be met for an organization to be a church. Nonetheless, there are certain of the criteria upon which we place a special emphasis. In our discussion of the criteria in *LSS,* we cited to that portion of a case which stated,

> While some of these are relatively minor, others, *e.g.,* the existence of an established congregation served by an organized ministry, the provision of regular religious services and religious education for the young, and the dissemination of a doctrinal code, are of central importance. The means by which an avowedly religious purpose is accomplished separates a "church" from other forms of religious enterprise. *See Chapman v. Commissioner of Internal Revenue, supra,* 48 T.C. [358] at 367 [ (1967) ].

*LSS* at 1287 (citing *American Guidance Foundation v. United States,* 490 F.Supp. 304, 306 (D.D.C.1980) (emphasis deleted and bracketed inserts in original)).

When we examine SOS in light of the fourteen criteria, giving due consideration to the ones we have deemed to be of central importance, we conclude that SOS has failed to establish that it is a church. While SOS does meet some of the criteria, it does not meet enough. SOS has failed to show that it enjoys an established congregation. While the record shows that large numbers of people attended musical events on SOS's property, nothing indicates that the participants considered SOS their church. SOS has not shown a sufficient ministry to satisfy the organized ministry criteria. It appears that every minister who was involved in a function at SOS was a guest minister from another church. We agree with the tax court that SOS has no provision for the religious education of the young. SOS's claim that impecunious churches cannot afford religious instruction of its youth is misguided. This instruction does not require a separate school building, and volunteer church members can alleviate the cost of teaching. Even impoverished churches should be able to provide this much.

We are mindful of SOS's claim that the criteria discriminate unfairly against rural, newly-formed churches which lack the monetary resources held by other churches. SOS is not alone in this position.[5] In large part it is for this reason we have emphasized what we view as the core requirements of the fourteen criteria and their application to the facts of this case.[6]

There is no doubt that SOS is engaged in sincere religious activity. In fact, appellee conceded as much at oral argument. However, the IRS has certain requirements which a religious organization, no matter how sincere, must meet before it can receive certain preferential tax treatment. Given the facts in the record before us, we simply do not believe that SOS is a church for federal tax purposes. The judgement of the tax court is therefore affirmed.

---

*Definitional Problems,* 45 Fordham L.Rev. 885, 916–917 (1977). The implication is that the § 511 regulation should not be applied to other sections of the code.

4. Our use of the criteria reflects our need to grant considerable deference to an interpretation of a statute by the administering agency, subject to our need to honor the clear meaning of the statute. *Gates v. United States,* 874 F.2d 584, 586 (8th Cir.1989).

5. *See Whelan, supra* at 925.

6. In *LSS,* this court refused to express an opinion on the approach taken by one district court when it stated: "What is a 'church' ... must be interpreted in light of the common understanding of the word." *De La Salle Institute v. United States,* 195 F.Supp. 891, 903 (N.D.Cal. 1961). We likewise decline to comment on the validity of this approach.