VIA, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
VIA v. Commissioner
Docket No. 19503-93X
United States Tax Court
T.C. Memo 1994-349; 1994 Tax Ct. Memo LEXIS 355; 68 T.C.M. (CCH) 212; July 26, 1994, Filed *355 Decision will entered for respondent. P is a California nonprofit public benefit association. P was created in order to promote the "wellness" of its members through education in the latest discoveries of exercise, nutrition, and stress management. P initially applied for exempt status under sec. 501(a), I.R.C., as an organization described in sec. 501(c)(3), I.R.C. P also sought non-private foundation status by reason of public support as provided in sec. 509(a)(2), I.R.C. Thereafter, P amended its application and sought nonprivate foundation status under sec. 509(a)(1), I.R.C., as a church described in sec. 170(b)(1)(A)(i), I.R.C.Held: P failed to establish that its religious purposes are accomplished in such a manner as to fulfill the requirements for church status. Further, any religious worship associated with P's program is incidental to its primary activities of advocating proper exercise, nutrition, and stress management. Consequently, P does not qualify as a church within the meaning of sec. 170(b)(1)(A)(i), I.R.C.
For petitioner: Lincoln Ling (an officer). For respondent: Ronald B. Weinstock. NIMS
NIMS
MEMORANDUM OPINION NIMS, Judge: Respondent determined *356 that petitioner qualified for exemption from Federal Income Tax under section 501(a) as an organization described in section 501(c)(3). Respondent further determined that petitioner does not qualify to be classified as a church within the meaning of section 170(b)(1)(A)(i). Petitioner challenges respondent's determination by invoking the jurisdiction of this Court for a declaratory judgment pursuant to section 7428. The sole issue for our determination is whether petitioner qualifies as a church within the meaning of section 170(b)(1)(A)(i). Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure. This case was submitted on the stipulated record pursuant to Rule 122. The evidentiary facts and representations contained in the administrative record are assumed to be true. Rule 217(b)(1). Background
Petitioner, VIA, is a California nonprofit public benefit association. Petitioner's principal office was located in Los Angeles, California, when it filed its petition. "Via" is a Latin term defined as "the way". Additionally, "VIA" is an *357 acronym for vitality, integrity, and ability. According to petitioner's founder and president, Lincoln Ling (Ling), VIA was designed in order to promote the "wellness" of its members through the utilization of the latest discoveries in exercise, nutrition, and stress management. Prior to founding VIA, Ling amassed knowledge and experience in both the fields of physical education and psychology. Ling participated in sports for most of his life, including entering Kansas University as a physical education major on a football scholarship. After his freshman year, Ling transferred to Southwestern in Winfield, Kansas, as a psychology major. Although Ling did not complete the psychology program at Southwestern, he thereafter served as president of the Clark County Mental Health Association in Nevada. Ling also operated a group of biofeedback centers from 1972 to 1980. Additionally, Ling competed in masters track and field competitions. Sometime around 1980, Ling suffered a stroke. As a result, Ling became increasingly interested in the benefits of proper nutrition combined with physical exercise. Consequently, Ling decided to incorporate what he had learned into a program that *358 could be shared with others; thus VIA was born. Membership in VIA requires payment of an annual five dollar membership fee. The five dollar fee entitles members to bimonthly monitorings of: (1) Resting and post-exercise heart rates, (2) exercise performance, and (3) percent of body fat. Additionally, VIA "mentors" tailor make individualized fitness programs for each member. VIA does not solicit monetary contributions from its members. The sale of Surance provides an additional source of revenue. Surance is a nutritional food supplement bar comprised of fruits, vegetables, raw seeds and nuts, rolled oats, nonfat milk solids, and added nutrients. At their option, members meet to discuss the latest discoveries in exercise, nutrition, and stress management, and provide support for one another in utilizing VIA's program. Additionally, VIA publishes and disseminates "info", a newsletter sold at grocery stores. Editions of "info" contain various stories revealing the latest discoveries in the fields of exercise, nutrition, and stress management. On the cover page of "info" editions, the following caption is printed: "published by VIA, a nonprofit education association formed *359 to promote wellness & life enjoyment via exercise and nutrition; and via WINsight" (insight into winning) (a method of stress reduction once instructed in seminars for the public). (Emphasis added). In October 1991, Ling executed on behalf of VIA a Form 1023, Application for Recognition of Exemption Under Section 501(c)(3) of the Internal Revenue Code; a Form 872-C, Consent Fixing Period of Limitation Upon Assessment of Tax Under Section 4940 of the Internal Revenue Code; and a Form 8718, User Fee for Exempt Organization Determination Letter Request. Petitioner attached a copy of its Articles of Association and By-Laws to the Form 1023. Specifically, petitioner's attached Articles of Association and By-Laws provided: III The specific purpose of this association is to promote the wellness of its members and the public at large via education on the latest discoveries in exercise, nutrition and stress management. We plan to publish a small newspaper and distribute it by practically giving it to grocers, etc. so that they may realize all the profit from its sales. In addition to reaching readers not served by the myriad subscription wellness letters, we hope that the publication *360 will be a means of recruiting members. We also plan to produce a radio and/or television program promulgating wellness news in a format similar to that of the MacNeil/Lehrer NewsHour. We intend to utilize the education via the interaction of members within a matrix designed to motivate members to motivate each other to regularly implement this knowledge in a program that results in enhanced wellness via an improved lifestyle. * * * V This association is organized and operated exclusively for educational purposes within the meaning of Section 501(c) (3) * * *. * * * [Emphasis added.]
In the Form 1023, Ling also stated that VIA was not a private foundation by authority of section 509(a)(2) and that VIA was not a church. Ling also attached to the Form 1023 several pages of VIA's Reference Digest which illuminated VIA's basic tenets. Essentially petitioner's Reference Digest suggested that members' stress levels could be controlled through the practice of five "synergetic constituents": (1) Enhanced exercise, (2) improved nutrition and personal care, (3) cognitive dissonance, (4) stress management techniques, and (5) "WINsight". On October 24, 1991, respondent returned *361 the Form 1023 to the petitioner and requested additional information, as the form was incomplete. Petitioner failed to respond to respondent's request for additional information and on December 26, 1991, respondent again requested by letter the additional information. Respondent received the requested information from petitioner on January 16, 1992. Thereafter, petitioner was informed by letter dated January 28, 1992, that its application for exempt status had been referred by the District Director to respondent's National Office for ruling. Due to a backlog of cases at respondent's National Office, review of petitioner's application was delayed. On June 6, 1992, while petitioner's application was awaiting ruling, petitioner informed respondent by letter that VIA was now seeking exempt status as a church. Specifically, Ling, on behalf of petitioner stated: Fortunately, your backlog has given us time to reconsider our purpose and formulate this amendment to our application. We wish to seek exemption as a church. You may already have perceived the rigor of our beliefs. However, we didn't initially seek recognition as a church because we felt we would attract fewer members *362 that way. We feared being perceived as a religious cult. We deleted material on religious philosophy from our Reference Digest after, first, modifying it in an attempt to make it more palatable to prospective members. * * *
Additionally, Ling attached a copy of VIA's amended Articles of Association and By-Laws which mirrored the originals except for two changes. Petitioner amended article III by merely inserting "spiritual growth" in addition to "wellness" as a goal of VIA. Additionally, petitioner amended article V by inserting "religious" in addition to VIA's educational purpose. In response to petitioner's request for exemption as a church, respondent requested additional information in order to determine petitioner's exempt status. Among other things, respondent requested a description of petitioner's form and place of worship, congregation and religious services, and training and school for the preparation of its ministers. Ling, on behalf of petitioner, responded to respondent's request for a description of the training of VIA's ministers as follows: We call them mentors and the training necessary to become one consists merely of three training class [sic] that *363 qualify them to administer a physical evaluation and design an individual wellness program. Most take classes from other institutions or do other studying but it's not required that they do so. * * * * * * The only school at present for the preparation of ministers (mentors) is my [Ling's] apartment. We hope soon to have mentors far enough along in their development that they will be able to prepare other members to be mentors.
As regards worship, Ling added "our form of worship takes place at all meetings: the enlightenment via the intake of new info and the attendant discussions is vital and it's all imbued via group harmonizing." Harmonizing is a method of meditation advocated by VIA as beneficial prior to physical exercise. These meetings, described by Ling as places of worship, are held at members' homes. According to Ling "Services are conducted weekly on days that vary with the schedule of the conducting member." Lastly, Ling added "Our congregation differs from that of most churches primarily in the emphasis placed on exercise and nutrition." By letter dated April 30, 1993, respondent determined that petitioner was exempt under section 501(c)(3) and issued an advance *364 ruling recognizing petitioner as a nonprivate foundation under section 509(a)(2). The April 30th letter also served as notice of respondent's initial determination that petitioner failed to qualify as a church within the meaning of section 170(b)(1)(A)(i). On May 25, 1993, petitioner sent respondent a letter protesting the April 30th initial determination. Finally, on July 16, 1993, respondent served petitioner with a final adverse ruling that petitioner failed to qualify for church status. Thereafter, petitioner having exhausted its administrative remedies invoked the declaratory judgment jurisdiction of this Court. Discussion
The only issue we are called upon to determine is whether petitioner qualifies as a church within the meaning of section 170(b)(1)(A)(i). Although the case was submitted on the stipulated record pursuant to Rule 122, petitioner still bears the burden of proof as to whether VIA qualifies for church status. Rule 217(c)(2)(A). Respondent contends that petitioner's activities do not fulfill the important associational role of assembly and congregational worship required for church status. Rather, respondent contends any religious aspect of petitioner's *365 activities is incidental to its primary purpose of fostering the individual self-improvement and "wellness" of its members through exercise, nutrition, and stress management. On the other hand, petitioner contends that VIA, in an admittedly unique and distinctive manner, meets most of respondent's criteria for church status and more importantly meets those criteria found to be most important by the courts. At the outset it is important to point out that our function is not to determine what constitutes a "religion" within the purview of the First Amendment to the Constitution. Rather our function is solely to determine whether the petitioner qualifies as a church, as Congress intended the term, described in section 170(b)(1)(A)(i). Chapman v. Commissioner, 48 T.C. 358, 361 (1967). For purposes of our analysis, the relevant statutory scheme is found in sections 509(a) and 170(b)(1)(A). As a general rule, section 509(a) characterizes exempt organizations as private foundations unless they are described in sections 509(a)(1) through 509(a)(4). Section 509(a)(1) provides nonprivate foundation status to organizations described in section 170(b)(1)(A) *366 (other than in clauses (vii) and (viii)) and section 509(a)(2) provides nonprivate foundation status to publicly supported organizations. Section 170(b)(1)(A)(i) specifically includes "a church or a convention or association of churches". The Internal Revenue Code is silent as to the definition of the term "church", as are the regulations promulgated under section 170. Without a definitive response from Congress or the Treasury Department as to the definition of a church, our task is to decide the issue on a case-by-case basis -- a task we have previously undertaken. See, e.g., Foundation of Understanding v. Commissioner, 88 T.C. 1341 (1987); Church of Eternal Life v. Commissioner, 86 T.C. 916 (1986); Chapman v. Commissioner, supra.
As to the religious nature of petitioner's organization, in Chapman v. Commissioner, supra at 363, this Court stated that "It is our opinion, based upon the foregoing legislative history of the phrase 'church or convention or association of churches,' that * * * though every church may be a religious organization, every *367 religious organization is not per se a church." Additionally, we said that "It seems clear * * * that Congress intended that the word 'church' have a more restrictive definition than the term 'religious organization.'" Foundation of Understanding v. Commissioner, supra at 1356 (citing American Guidance Foundation v. United States, 490 F. Supp. 304, 306 (D. D.C. 1980), affd. without opinion (D.C. Cir., July 10, 1981); Church of Visible Intelligence That Governs Universe v. United States, 4 Cl. Ct. 55 (1983)). These principles severely undermine the crux of petitioner's argument. Throughout the course of these proceedings, petitioner has repeatedly tried to persuade both the respondent and this Court of the religious nature of its organization. Respondent concedes that petitioner is a religious organization, and we no doubt believe that petitioner's views and principles are sincere; however, classification as a religious organization without more does not automatically result in "church" status. See Chapman v. Commissioner, supra at 363. To aid in *368 the process of classification of religious organizations as churches, respondent has established 14 criteria: (1) A distinct legal existence; (2) a recognized creed and form of worship; (3) a definite and distinct ecclesiastical government; (4) a formal code of doctrine and discipline; (5) a distinct religious history; (6) a membership not associated with any other church or denomination; (7) an organization of ordained ministers; (8) ordained ministers selected after completing prescribed studies; (9) a literature of its own; (10) established places of worship; (11) regular congregations; (12) regular religious services; (13) Sunday schools for religious instruction of the young; (14) schools for the preparation of its ministers. 5 Administration, Internal Revenue Manual 7(10)69, Exempt Organizations Examination Guidelines Handbook 321.3(3), at 22,455-4 (CCH) (Apr. 5, 1982). Although we have declined to adopt these guidelines as a formal test, we have concluded that they are helpful in deciding what is essentially a question of fact. Foundation of Understanding v. Commissioner, supra at 1358. In lieu of a rigid test, we opted *369 instead to classify a religious organization as a church by examining its religious purposes and, particularly, the means by which its religious purposes are accomplished. Id. at 1357 (citing Chapman v. Commissioner, supra at 367 (Tannenwald, J., concurring)). Additionally, as a minimum threshold "a church includes a body of believers or communicants that assembles regularly in order to worship." Foundation of Understanding v. Commissioner, supra at 1357 (emphasis added) (citing American Guidance Foundation v. United States, 490 F. Supp. at 306; Church of Eternal Life v. Commissioner, 86 T.C. at 924; Chapman v. Commissioner, supra at 367 (Tannenwald, J., concurring)). It is against this backdrop that we determine petitioner's church status. Apparently, petitioner's religious purpose is the promotion of "wellness". Petitioner claims that this religious purpose is accomplished through meetings in individual members' homes. By petitioner's own admission "members meet fairly regularly *370 but very optionally." Additionally, petitioner added that meetings are conducted weekly on days that vary with the schedule of the conducting member. In all other respects, the record is devoid of any information evidencing that these meetings take place with regularity or consistency. Petitioner also describes the meetings as its form of worship. Repeatedly, the record evidences that these meetings consist of the exchange of information on exercise, nutrition, and stress management coupled with group harmonizing (meditation). As regards an ordained ministry for the carrying out of petitioner's religious purpose, we are told by petitioner that Ling's apartment provides an informal school in which "mentors" receive three classes. The record indicates that the primary, if not only, services provided by these mentors is the tailoring and monitoring of member's individual fitness programs. Petitioner provides no school or instruction for the education of its young. By petitioner's own admission, it lacks a definite and distinct ecclesiastical government and its discipline is "completely informal and unstructured". In sum, of all of respondent's 14 criteria, we can conclude at *371 most that petitioner satisfies only two -- a distinct legal existence and a literature of its own. We recognize that few churches could meet all of respondent's criteria. Foundation of Understanding v. Commissioner, supra at 1358. However, using respondent's criteria only as a reasonable yardstick, we cannot conclude that an organization that lacks most, if not all, of these criteria qualifies as a church within the meaning of section 170(b)(1)(A)(i). In our opinion, petitioner, even when viewed as a religious organization, falls into this class. Additionally, petitioner's reliance on Foundation of Understanding v. Commissioner, supra, is misplaced. Although, we did find that the Foundation of Human Understanding (FHU) qualified as a church, that case is distinguishable. Unlike petitioner, FHU provided regular services for established congregations. The services were conducted three to four times a week by ordained ministers for congregations of no less then 50 to 300 members. FHU ministers were ordained only after having completed a three-year apprenticeship under the tutelage of FHU's founder and leader. *372 FHU also operated a regular school for children in which teachings of FHU principles formed part of the curriculum. In one respect, petitioner resembles FHU. However, this resemblance strengthens rather than weakens our above stated conclusion. FHU's founder had utilized the mass media and commercial activities in order to spread its beliefs, including broadcasted radio programs, a published magazine, and the sale of both audio tapes and books published by its founder. Such activities were of concern to the Court and we noted that "When bringing people together for worship is only an incidental part of the activities of a religious organization, those limited activities are insufficient to label the entire organization as a church." Foundation of Understanding v. Commissioner, supra at 1357 (citing De La Salle Institute v. United States, 195 F. Supp. 891, 901 (N.D. Cal. 1961)); Chapman v. Commissioner, supra at 364). Ultimately, we determined that despite the depth of FHU's broadcasting and publishing activities, its associational aspects were "much more than incidental." Id. *373 at 1361. Similar to FHU, petitioner publishes "info" (a newsletter), sells Surance (a nutritional food supplement) and Ling has expressed intentions of publishing a book and/or broadcasting a "newshour" on television. Inescapably, we conclude that petitioner engages in its activities in order to educate the public on the benefits of physical exercise, proper nutrition, and stress management. Even if petitioner's meetings are viewed as a form of worship, this activity appears to be incidental to petitioner's other activities; thus such worship is insufficient to label petitioner as a church. To reflect the foregoing, Decision will be entered for respondent.