# United States Court of Appeals for the Federal Circuit

---

**FOUNDATION OF HUMAN UNDERSTANDING,**
*Plaintiff-Appellant,*

v.

**UNITED STATES,**
*Defendant-Appellee.*

---

2009-5129

---

Appeal from the United States Court of Federal Claims in 04-CV-1441, Chief Judge Emily C. Hewitt.

---

Decided: August 16, 2010

---

MARC K. SELLERS, Schwabe Williamson & Wyatt, PC, of Portland, Oregon, argued for plaintiff-appellant. With him on the brief was DAN ELLER.

KENNETH L. GREENE, Attorney, Appellate Section, Tax Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee. With him on the brief were JOHN A. DICICCO, Acting Assistant Attorney General, and ELLEN PAGE DELSOLE, Attorney.

---

Before LOURIE, BRYSON, and GAJARSA, *Circuit Judges.*

BRYSON, *Circuit Judge.*

The Foundation of Human Understanding ("the Foundation"), which describes itself as "based upon Judeo-Christian beliefs and the doctrine and teachings of its founder, Roy Masters," challenges a decision of the United States Court of Federal Claims that the Foundation did not qualify as a "church" under section 170(b)(1)(A)(i) of the Internal Revenue Code ("I.R.C."), 26 U.S.C. § 170(b)(1)(A)(i), for the period from January 1, 1998, through December 31, 2000. We affirm.

I

The Foundation is a nonprofit corporation that was incorporated in 1963. The Internal Revenue Service ("IRS") first recognized the Foundation's tax-exempt status under I.R.C. § 501(c)(3) in 1965. In 1970, the Foundation filed Form 4653, entitled "Notification Concerning Foundation Status," in which it represented to the IRS that it was not a private foundation under I.R.C. § 509(a)(1) because it qualified as a church under I.R.C. § 170(b)(1)(A)(i). The IRS agreed that the Foundation was not a private foundation, but only because the Foundation qualified as a publicly supported organization under I.R.C. § 170(b)(1)(A)(vi).

The Foundation subsequently renewed its request for a ruling from the IRS that it qualified as a church under section 170. The IRS denied that request in 1983. The Foundation responded by filing an action before the United States Tax Court in which it sought a declaratory judgment that it qualified as a church. The Tax Court ruled in favor of the Foundation, relying principally on the following facts: (1) the Foundation owned a building

in Los Angeles, California, where it conducted services "three or four times a week"; (2) the Foundation operated Brighton Academy, "a school for children" that instructed its students in the teachings of the Foundation; (3) the Foundation purchased the Tall Timber Ranch in Selma, Oregon, where it conducted seminars, meetings, and other activities; (4) the Foundation purchased a church building in Grants Pass, Oregon, and conducted services there; and (5) the Foundation provided "regular religious services for established congregations [consisting of 50 to 350 persons] that [were] served by an organized ministry." *Foundation of Human Understanding v. Comm'r* (*Foundation I*), 88 T.C. 1341, 1347-49, 1359 (1987). The Tax Court recognized that the Foundation devoted substantial resources to disseminating its message through radio broadcasts and printed pamphlets, activities that did not support its claim to church status. The court held, however, that those broadcasting and publishing activities did not "overshadow the other indications that petitioner is a church." *Id.* at 1360.

In the years following the Tax Court's decision, the Foundation underwent several changes. First, in 1991, Brighton Academy was separately incorporated and began to operate as a "private non-denominational Christian school" rather than a school based on the Foundation's doctrines. Next, during the mid-1990s, the Foundation sold its buildings in Los Angeles and Grants Pass, and, in the late 1990s, meetings at the Tall Timber Ranch became less frequent. The Foundation, however, continued to disseminate its messages through broadcast and print media, and it began to use the Internet for the same purpose.

In 2001, the IRS began a church-tax inquiry for the period from January 1, 1998, through December 31, 2000. At the conclusion of that inquiry, the IRS determined that

while the Foundation was entitled to retain its tax-exempt status under section 501(c)(3), its church status under section 170 would be revoked.[1] The Foundation challenged that decision by filing the present action, seeking a declaratory judgment in the United States Court of Federal Claims pursuant to 26 U.S.C. § 7428. Both parties moved for summary judgment. The court granted judgment to the government in a thorough and carefully reasoned opinion on which we substantially rely. *Foundation of Human Understanding v. United States* (*Foundation II*), 88 Fed. Cl. 203 (2009).

The trial court placed the burden of proof on the Foundation to demonstrate its status as a church and restricted the scope of evidence to the Foundation's activities during the audit years of 1998 through 2000. The court then identified the two main analytical approaches that have been used to determine whether an institution is a "church" under section 170: a set of 14 criteria devised by the IRS,[2] and the so-called "associational test" adopted

---

[1] The IRS made clear that, even without church status under section 170, the Foundation qualified as a "religious organization" under I.R.C. § 501(c)(3) and therefore would not lose its tax-exempt status. A "religious organization" that does not enjoy "church" status is required to file informational returns with the IRS under I.R.C. § 6033, and the IRS has broader authority to investigate such an organization's activities. *See Spiritual Outreach Soc'y v. Comm'r*, 927 F.2d 335, 337 n.2 (8th Cir. 1991); *Church of Spiritual Tech. v. United States*, 26 Cl. Ct. 713, 731 n.37 (1992) ("[C]hurches may be investigated by the IRS only in accordance with strict and specific procedures specified in I.R.C. § 7611.").

[2] The 14 criteria have their origin in a 1979 speech by the IRS Commissioner, and the IRS has subsequently applied those factors in its section 170 determinations. *See Foundation I*, 88 T.C. at 1357. The 14 criteria are: (1) a distinct legal existence; (2) a recognized creed and form of worship; (3) a definite and distinct ecclesiastical gov-

by several courts. The court expressed concern about the "14 criteria" approach on the ground that it "appears to favor some forms of religious expression over others in a manner in which, if not inconsistent with the letter of the Constitution, the court finds troubling when considered in light of the constitutional protections of the Establishment and Free Exercise Clauses." *Foundation II*, 88 Fed. Cl. at 217. Nonetheless, the court looked to the 14 criteria for guidance and found that the Foundation satisfied some, but not all, of those criteria. For example, the court found that the Foundation had not established that it had a regular congregation or that it held regular services during the years at issue.

Even though the trial court referred to the 14 criteria in the course of its factual findings, it ultimately decided the case by applying the associational test, which defines a church as an organization that includes a body of believers who assemble regularly for communal worship. Specifically, the court found that the Foundation did not provide regular religious services to an established congregation and concluded that "[t]he extent to which [the] Foundation brings people together to worship is incidental to its main function" of spreading its message through publication and broadcasting. *Foundation II*, 88 Fed. Cl.

---

ernment; (4) a formal code of doctrine and discipline; (5) a distinct religious history; (6) a membership not associated with any other church or denomination; (7) an organization of ordained ministers; (8) ordained ministers selected after completing prescribed studies; (9) a literature of its own; (10) established places of worship; (11) regular congregations; (12) regular religious services; (13) Sunday schools for religious instruction of the young; and (14) schools for the preparation of its ministers. The IRS also considers "any other facts and circumstances which may bear upon the organization's claim for church status." *Id.* at 1357-58.

at 234. Relying on case law that treats publishing activities as insufficient to confer church status and denies church status to entities whose associational activities are merely incidental to their publishing and broadcasting activities, the trial court held that the Foundation did not qualify as a church under section 170. The Foundation appeals that decision.

## II

Neither Congress nor the IRS has provided much guidance as to the meaning of the term "church" in I.R.C. § 170 or what is required for an institution to qualify for that designation. As the trial court observed, neither the statute nor any IRS regulation defines that statutory term. *See Foundation II*, 88 Fed. Cl. at 218; *Am. Guidance Found. v. United States*, 490 F. Supp. 304, 306 (D.D.C. 1980) (Congress has offered "virtually no guidance" as to what it meant by the term "church" in section 170.).

Nevertheless, some degree of consensus has emerged from court decisions. First, those courts that have addressed the issue largely agree that "Congress intended a more restricted definition for a 'church' than for a 'religious organization.'" *Church of the Visible Intelligence that Governs the Universe v. United States*, 4 Cl. Ct. 55, 64 (1983); *see also Am. Guidance*, 490 F. Supp. at 306; *Chapman v. Comm'r*, 48 T.C. 358, 363 (1967) ("every religious organization is not per se a church"). Thus, as in this case, an entity that engages in religious teaching may be a "religious organization" but still not qualify as a "church" for purposes of section 170. Second, as several courts have noted, "[t]he means by which an avowedly religious purpose is accomplished [is what] separates a 'church' from other forms of religious enterprise." *Spiritual Outreach Soc'y v. Comm'r*, 927 F.2d 335, 339 (8th Cir.

1991); *Am. Guidance*, 490 F. Supp. at 306; *First Church of In Theo v. Comm'r*, 56 T.C.M. (CCH) 1045 (1989); *see also United States v. Jeffries*, 854 F.2d 254, 258 (7th Cir. 1988) (an established congregation, regular religious services, and dissemination of a doctrinal code "help distinguish a church from some other form of religious enterprise"). Third, the courts have relied mainly on the IRS's 14 criteria and on the associational test when addressing the distinction between a religious organization and a church under section 170.

With respect to the 14 criteria, we share the concerns expressed by the trial court and note that courts have generally declined to accept the 14 criteria as a definitive test for whether an institution qualifies as a church. *See, e.g.*, *Foundation I*, 88 T.C. at 1358; *Spiritual Outreach*, 927 F.2d at 339 (treating the 14 criteria as "a guide, helpful in deciding what constitutes a church"). Moreover, even those cases that rely on the 14 criteria apply them flexibly, recognizing that "the IRS does not give controlling weight to any one [of the 14 criteria]," *Visible Intelligence*, 4 Cl. Ct. at 64; *see also Foundation I*, 88 T.C. at 1350 ("These criteria are not exclusive and are not mechanically applied, but, rather, serve as a list of some of the characteristics that may be used in determining whether an organization is a church . . . .").

Courts have been more receptive to the associational test as a means of determining church status under section 170. *See, e.g.*, *Church of Eternal Life & Liberty, Inc. v. Comm'r*, 86 T.C. 916, 924 (1986) ("To qualify as a church an organization must serve an associational role in accomplishing its religious purposes."); *Am. Guidance*, 490 F. Supp. at 306 ("At a minimum, a church includes a body of believers or communicants that assembles regularly in order to worship."); *Visible Intelligence*, 4 Cl. Ct. at 65; *VIA v. Comm'r*, 68 T.C.M. (CCH) 212 (1994); *Foun-*

*dation I*, 88 T.C. at 1357; *Church of Spiritual Tech. v. United States*, 26 Cl. Ct. 713, 730-31 n.36 (1992); *Spiritual Outreach Soc'y v. Comm'r.*, 58 T.C.M. (CCH) 1284 (1990), *aff'd*, 927 F.2d 335 (8th Cir. 1991) ("[A] church is a cohesive group of individuals who join together to accomplish the religious purposes of mutually held beliefs."); *Chapman v. Comm'r*, 48 T.C. at 367 (Tannenwald, J., concurring) ("In my opinion, the word 'church' implies that an otherwise qualified organization bring[s] people together as the principal means of accomplishing its purpose."); *see also Spiritual Outreach*, 927 F.2d at 338 (noting the Tax Court's holding that the organization "failed to fulfill an associational requirement" but resolving the case without reaching "the associational requirement issue").

We agree that the associational test is an appropriate test for determining church status under section 170, although we recognize that the associational test and the "14 criteria test" substantially overlap; as courts have pointed out, among the most important of the 14 criteria are the requirements of "regular congregations" and "regular religious services." *See Spiritual Outreach*, 927 F.2d at 339; *Am. Guidance*, 490 F. Supp. at 306. Thus, whether applying the associational test or the 14 criteria test, courts have held that in order to be considered a church under section 170, a religious organization must create, as part of its religious activities, the opportunity for members to develop a fellowship by worshipping together. *See Church of Eternal Life*, 86 T.C. at 924 ("A church is a coherent group of individuals and families that join together to accomplish the religious purposes of mutually held beliefs. In other words, a church's principal means of accomplishing its religious purposes must be to assemble regularly a group of individuals related by common worship and faith.").

The Foundation asserts that a religious organization should be treated as a church under section 170 as long as "there is a body of followers beyond the scope of a 'family church' . . . [who] seek the teachings of the organization and express or acknowledge an affiliation with its religious tenets." However, every religious organization has members who express an affiliation with the organization's tenets. For that reason, the Foundation's approach is at odds with the generally accepted principle that Congress intended a more restricted definition for a "church" than for a religious organization, especially in light of case law interpreting section 170 to require more than mere affiliation by a number of people with an organization espousing a particular belief system. *See, e.g., Spiritual Outreach*, 927 F.2d at 339; *VIA*, 68 T.C.M. (CCH) 212.

Therefore, in order to qualify as a church under section 170, the Foundation was required to establish that it met the associational test during the years at issue.[3] The trial court held that the Foundation failed to carry that burden. For the reasons given below, we agree with the court's conclusion.

## III

The Foundation does not dispute that it had the burden to establish that the IRS's revocation was erroneous. *See St. Matthew Publ'g v. United States*, 41 Fed. Cl. 142, 145-46 (1998); *see also Visible Intelligence*, 4 Cl. Ct. at 65. The trial court held that the Foundation failed to satisfy that burden because it did not establish that it held regular services with a regular congregation during the

---

[3] Because the IRS ruled that the Foundation qualified as a "religious organization" for purposes of I.R.C. § 501(c)(3), the Foundation did not need to establish the sincerity or legitimacy of its religious beliefs.

years at issue and because its "electronic ministry" did not satisfy the associational test. The Foundation challenges the trial court's rulings on both of those issues.

A

With respect to the Foundation's in-person services, the record shows that during the three-year audit period at issue the Foundation did not hold regular services at any location, including its facility at the Tall Timber Ranch in Selma, Oregon. During that period, the Foundation held 21 seminars in various locations throughout the United States, five of which took place at the Tall Timber Ranch. We agree with the government that the evidence regarding the seminars does not establish that the Foundation conducted regular meetings or had a regular congregation and therefore does not satisfy the associational test. First, the attendance of groups of people at occasional seminars in cities scattered across the country does not constitute a regular assembly of a cohesive group of people for worship. Second, as for the seminars at the Tall Timber Ranch, the Foundation has not shown that those five meetings in a three-year period enabled congregants to establish a community of worship. While the associational test does not demand that religious gatherings be held with a particular frequency or on a particular schedule, it does require gatherings that, by virtue of their nature and frequency, provide the opportunity for members to form a religious fellowship through communal worship. *See Spiritual Outreach*, 58 T.C.M. (CCH) at 1287 (evidence of 20 meetings over two years comprising "music festivals and revivals . . . involving principally gospel singing . . . and gatherings for individual meditation and prayer by persons who do not regularly come together as a congregation for such purposes" did not establish "the cohesiveness factor which we think is an essential ingredient of a 'church'"). The Foundation

has failed to show that the sporadic meetings conducted in various locations were sufficiently regular to satisfy that requirement. Moreover, the Foundation has presented no evidence regarding attendance or any other indication that a regular congregation gathered even for those occasional meetings during the three-year period at issue.

The Foundation points to a number of letters from individuals stating that they had received the Foundation's teachings and considered the Foundation to be their church. However, that evidence does not identify those who attended in-person meetings as opposed to those who received the Foundation's teachings through its electronic ministry. The evidence of attendance at Foundation meetings or services is thus insufficient to satisfy the associational test because it does not establish the frequency or nature of the meetings, the consistency of the congregation, or the extent to which those meetings enabled members to associate with each other in worship.

In sum, the record supports the trial court's finding that the in-person services conducted during the years in question were merely incidental to the Foundation's primary purposes, and were therefore insufficient to demonstrate that the Foundation was a "church" for tax purposes. *See Foundation I*, 88 T.C. at 1357 ("When bringing people together for worship is only an incidental part of the activities of a religious organization, those limited activities are insufficient to label the entire organization a church."). Accordingly, we uphold the trial court's decision on that issue.

B

With respect to its "electronic ministry," the Foundation asserts that its members regularly assembled to

worship as a "virtual congregation" by listening to sermons broadcast over the radio and the Internet at set times, referred to as "appointments to listen." However, disseminating religious information, whether through print or broadcast media, does not fulfill the associational role required to qualify as a "church" under section 170. *See First Church of In Theo*, 56 T.C.M. (CCH) 1045; *VIA*, 68 T.C.M. (CCH) 212; *Church of Eternal Life*, 86 T.C. at 921; *see also Foundation I*, 88 T.C. at 1360. The fact that all the listeners simultaneously received the Foundation's message over the radio or the Internet does not mean that those members associated with each other and worshiped communally. As the trial court observed, "[t]here is no evidence . . . that [the Foundation's] adherents regard their experience while listening to [the Foundation's] broadcasts as a shared experience with other . . . followers, or as a communal experience in any way." *Foundation II*, 88 Fed. Cl. at 232.

The Foundation argues that it satisfied the associational test because its electronic ministry included a "call-in" show that enabled individuals to call and interact with the Foundation's clergy over the telephone. Those conversations, according to the Foundation, were broadcast to listening congregants and subsequently transcribed for distribution. However, a call-in show, like other forms of broadcast ministry, does not provide individual congregants with the opportunity to interact and associate with each other in worship, and it therefore does not provide a basis for concluding that the Foundation's religious activities satisfied the associational test.

The Foundation relies on *Purnell v. Commissioner*, 63 T.C.M. (CCH) 3037 (1992), for the proposition that its broadcasting activities qualified it as a "church without walls." In *Purnell*, however, the court found that the organization in question had regular congregations and

regular services. The fact that the organization also served an irregular congregation by operating in part as a "street church" did not diminish its standing as a church under section 170. Under *Purnell*, if an organization holds regular services with a regular congregation, it satisfies the associational test even if it also undertakes other activities, such as broadcasting, that would not qualify under the associational test if considered alone. *See Foundation I*, 88 T.C. at 1357. In this case, by contrast, the Foundation has not established that it held regular services with a regular congregation. *Purnell* therefore provides no support for the Foundation's argument.

Because the Foundation failed to establish that, during the three-year period at issue, it qualified as a "church" within the meaning of I.R.C. § 170, we uphold the trial court's decision sustaining the IRS's ruling.

Each party shall bear its own costs for this appeal.

**AFFIRMED**