# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-2255

_____

| | | |
|---|---|---|
| Arkansas State Police Association, Inc., | * | |
| | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the |
| v. | * | United States Tax Court. |
| | * | |
| Commissioner of Internal Revenue, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted:  December 12, 2001

Filed:  March 6, 2002

_____

Before LOKEN and BYE, Circuit Judges, and BOGUE,[1] District Judge.

_____

BYE, Circuit Judge.

The Arkansas State Police Association (ASPA) challenges the Tax Court's[2] decision that money ASPA received from the publication of "The Arkansas Trooper" magazine should be taxed as unrelated business income, rather than treated as nontaxable royalty income.  We affirm.

_____

[1]The Honorable Andrew W. Bogue, United States District Judge for the District of South Dakota, sitting by designation.

[2]The Honorable Stephen J. Swift, United States Tax Court.

# I

ASPA is a non-profit corporation generally recognized as exempt from federal income tax under 26 U.S.C. § 501(c)(5) (labor organization). From 1993 through 1996, ASPA entered into an agreement with Brent-Wyatt West (BWW), an Arizona publishing company, to publish "The Arkansas Trooper" magazine three times a year. Two separate agreements (two years each) covered the four years. Both agreements were entitled "Royalties and Licensing Agreement." BWW paid ASPA $25,200 each year to publish the magazine, as well as a percentage (26% under one of the two-year agreements, and 27% under the other) of the money received from the advertising published in the magazine. Over the course of the four years, ASPA received a total of $876,697 from the publication of the magazine.

BWW bore all the costs of producing and distributing the magazine and solicited all the advertising, but BWW's solicitors indicated they were calling "on behalf of the Arkansas Police Association." BWW controlled the funds received from the advertisers, but the checks were made payable to ASPA. The front cover of the magazine bore the enscription "The Official Publication of the Arkansas State Police Association." A "President's Message" written by ASPA's elected president appeared in each issue of the magazine. ASPA provided its membership list to BWW, and BWW distributed copies of the magazine free of charge to ASPA members, to advertisers who paid at least $100 for ads, and to each Arkansas state legislator.

ASPA's Vice President of Public Relations (a part-time, voluntary position) devoted approximately 250 to 300 hours a year to a variety of projects sponsored by ASPA, including magazine-related activities. The Vice President reviewed BWW's sales presentations, and reviewed the pre-publication copy of the magazine for accuracy and suitability of the use of ASPA's name. The Vice President also wrote to ASPA's members, encouraging them to take photographs and write articles about

ASPA activities, and to submit them to ASPA for inclusion in the magazine. The Vice President spent about 15-20 hours each year on magazine-related activities.

In its tax forms for the years 1993 to 1996, ASPA treated money received from the publication of "The Arkansas Trooper" as non-taxable royalty income. The Commissioner of Internal Revenue determined ASPA should have reported the income as taxable unrelated business income. The Commissioner filed notices of deficiency against ASPA for the four years in the amounts of $63,004, $63,730, $71,158, and $80,289, respectively. ASPA challenged the notice of deficiencies in tax court. Based on a stipulated record, the tax court held money ASPA received from publication of the magazine was unrelated business income because ASPA participated in and maintained control over significant aspects of the magazine's publication. ASPA appeals, contending the money should be considered nontaxable royalty income because ASPA's participation in the publication of "The Arkansas Trooper" was passive, *de minimis*, and related only to the protection of its name.

II

Because the tax court decided this case on a stipulated record without trial, we review de novo the tax court's application of tax law principles, Spiritual Outreach Soc. v. Comm'r, 927 F.2d 335, 338 (8th Cir. 1991), keeping in mind that the clearly erroneous standard applies to any reasonable inferences drawn by the tax court from the stipulated or undisputed facts, Salomon v. Crown Life Ins. Co., 536 F.2d 1233, 1238 (8th Cir. 1976).

The tax code provides that an otherwise tax-exempt organization will be taxed on business income generated from conducting business unrelated to "the exercise or performance of its charitable, educational, or other purpose." 26 U.S.C. § 513(a). "The purpose of taxing charities' unrelated business taxable income was to end what Congress saw as abuse of the exemption, by charities able to carry on full-fledged

-3-

commercial enterprises in competition with corporations whose profits were fully taxable."  Or. State Univ. Alumni Ass'n v. Comm'r, 193 F.3d 1098, 1101 (9th Cir. 1999) (internal citations and quotations omitted).  Royalty income, however, is non-taxable, see 26 U.S.C. § 512(b), because that kind of unrelated business income is generated "passively" rather than in active competition with taxable corporations.  E.g., Portland Golf Club v. Comm'r, 497 U.S. 154, 161 (1990) ("Since Congress concluded that investors reaping tax-exempt income from passive sources would not be in competition with commercial businesses, it excluded from tax the investment income realized by exempt organizations.").

ASPA contends the payments it received from BWW should be considered nontaxable royalty payments.  ASPA relies heavily upon what the parties refer to as the "affinity" credit card cases.  Those cases involve a credit card company's use of a tax-exempt organization's name to promote the credit card company's own business of extending credit, and hold that a tax-exempt organization's *de minimis* participation in the sale of credit cards, limited to supervising or controlling the manner in which its name is used, does not disqualify the monies received from being considered nontaxable royalties.  See Or. State, 193 F.3d at 1101-02; Miss. State Univ. Alumni, Inc. v. Comm'r, 74 T.C.M. (CCH) 458 (1997) (1997 WL 529003); see also Sierra Club, Inc. v. Comm'r, 86 F.3d 1526, 1535-35 (9th Cir. 1996) (involving the rental of a tax-exempt organization's mailing list for use in an affinity credit card program).

ASPA also relies upon Rev. Rul. 81-178, 1981-2 C.B. 135, which distinguishes between payments for personal services performed by a tax-exempt organization, and payments solely for use of the tax-exempt organization's name.  The revenue ruling describes two tax-exempt organizations, both of which license other businesses to use their trademarks to sell products.  Both tax-exempt organizations have the right to approve the quality of style of the licensed products, but only one organization requires its members to perform personal services to endorse the products.  The revenue ruling indicates that payments to the former organization are nontaxable

royalties, but payments to the latter are considered compensation for personal services and are therefore taxable as unrelated business income. ASPA contends the services it performed for BWW all related to protecting the use of ASPA's name.

Relying principally upon State Police Ass'n of Mass. v. Comm'r, 125 F.3d 1 (1st Cir. 1997), and Fraternal Order of Police v. Comm'r, 833 F.2d 717 (7th Cir. 1987), the tax court found the payments ASPA received from BWW were not passive royalty income because ASPA took a significant and active role in publishing "The Arkansas Trooper." The Seventh and First Circuit cases both involve publications similar to "The Arkansas Trooper," and hold that income received by a fraternal police organization for advertisements in its own publication is taxable. Fraternal Order, 833 F.2d at 723 (holding the income taxable and addressing the royalty exception); State Police Ass'n, 125 F.3d at 7 (holding the income taxable without addressing the royalty exception). The tax court also distinguished the "affinity" credit card cases. In those cases, the credit card company promoted its own product using the tax-exempt organization's name. The tax court noted that "The Arkansas Trooper" "represented not the magazine of BWW but the magazine of petitioner [ASPA] through which petitioner promoted [itself]."

We agree with the tax court. The payments at issue should not be considered passive royalty income even if ASPA spent very little time working on the magazine. A royalty exists when A uses B's name to promote A's products. The affinity credit card cases involved royalties because the credit card company used the tax-exempt organization's name to promote the credit card company's product. But here, BWW used ASPA's name to promote ASPA, not BWW. The fact the parties labeled their agreement a "Royalties and Licensing Agreement" is of no consequence because the agreement was really an agency relationship. See State Police Ass'n, 125 F.3d at 7 (finding an agency relationship between police organization and publisher and stating "the label which contracting parties place on their relationship is not decisive of their status vis-a-vis third parties.").

We believe the most applicable case is Nat'l Collegiate Athletic Ass'n v. Comm'r, 92 T.C. 456 (1989), rev'd on other grounds, 914 F.2d 1417 (10th Cir. 1991). That case involved the publication of programs for the Final Four games of the 1982 NCAA Division I Basketball Tournament. The NCAA contracted with a publisher to solicit advertisements for inclusion in the program, and the issue was whether the NCAA's share of the proceeds was exempt from taxation as royalty income, or taxable as unrelated business income. The tax court concluded the publisher was acting on behalf of the NCAA to promote the NCAA, rather than the NCAA allowing the use of its name to promote the publisher's separate product. NCAA v. Comm'r, 92 T.C. at 469-70. Similarly, in this case, the essence of the agreement between BWW and ASPA was to impose a duty upon BWW to perform publishing services on ASPA's behalf and under ASPA's control. By publishing "The Arkansas Trooper," BWW acted on ASPA's behalf to promote ASPA, and did not pay for the use of ASPA's name to promote BWW's separate product.

We affirm the decision of the tax court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-6-